THOMAS B. RILEY, SR., APPELLANT, v. THE CITY OF LINCOLN, A CITY OF THE PRIMARY CLASS, A MUNICIPAL CORPORATION, APPELLEE.

282 N. W. 2d 586

Filed August 21, 1979. No. 42309.

J. L. Krause, for appellant.

William F. Austin, Lincoln City Attorney, and James D. Faimon, for appellee.

Heard before KRIVOSHA, C. J., McCOWN, and BRODKEY, JJ., and BUCKLEY and KELLY, District Judges.

BRODKEY, J.

This case involves an appeal by the plaintiff, Thomas B. Riley, Sr., from an order issued by the Nebraska Workmen's Compensation Court after rehearing, dismissing his claim for benefits against his employer, the City of Lincoln, for certain injuries which he claims arose out of and in the course of his employment by the City of Lincoln for whom he was working as an equipment operator in the City water department.

In plaintiff's amended petition on rehearing, Riley alleges, among other things, that on or about September 12, 1974, he suffered personal injuries in an accident arising out of and in the course of his employment and that he "hurt and damaged his back, left arm and left shoulder in the process of handling and lifting heavy objects [as] required in his job, for the Defendant." He further alleges that in 1972 and 1973 he had several minor injuries at work, one as a result of a caving in of a ditch; that he had several operations, the first being on or about April 28, 1973, for numbness in the left wrist, and on April 9, 1974, he had an operation for the removal of a cervical rib to cure numbness in his right and left arms, but he had recovered from those operations which were not covered under workmen's compensation. He alleged that on September 12, 1974, he injured his back, with pain radiating into his left shoulder, left arm, and neck, while moving heavy loads at defendant's job

site as required by his duties and was treated for his injuries by Dr. John R. Thompson. He was admitted to the hospital on September 13, 1974, through September 16, 1974, returned to light work on or about September 30, 1974, and during the period of September 12, 1974, through September 30, 1974, he received workmen's compensation benefits for the injuries. On or about October 18, 1974, he reinjured his back and arm and returned to work again on or about October 24, 1974. He further alleges that the initial medical diagnosis for the September 12 and October 18, 1974, injuries was that it was an apparent minor injury to the back, arm, and hands, but, at that time, with no apparent indication of permanent disability. He further alleges that in June, July, and August of 1975, while employed by the defendant, he continued to experience great pain in the back, left arm, and shoulder, which became so extremely painful that he was finally diagnosed by his doctors as of September 3, 1975, to be totally disabled, that this was the first diagnosis of serious and permanent injury he had received, and that he has been totally and temporarily disabled since September 3, 1975. He further alleges that his injury was, and is, latent and progressive, and did not develop into a compensable disability until September 3, 1975. He finally alleges the defendant knew of his disability but has refused to make any additional payments to him, and that the defendant specifically waived the issue of the running of the statute of limitations. In his prayer, plaintiff not only prays for the determination of the amount of benefits to which he is entitled, but also asks the court to assess a 50 percent penalty against the defendant and award him a reasonable attorney's fee.

Defendant filed an answer to plaintiff's petition, which, in effect, amounts to a general denial of the essential allegations of plaintiff's petition, and a plea of the running of the statute of limitations. It is the

position of the defendant, City of Lincoln, that plaintiff had suffered from arm and shoulder difficulties from at least 1972, which was a preexisting and ongoing condition, not arising out of plaintiff's employment.

Evidentiary hearings were held before one judge of the compensation court, and later, on motion for rehearing, before the three-judge court. Defendant prevailed in both hearings, although it appears that there was additional evidence adduced at the three-judge court hearing, which was not presented at the one-judge hearing.

In its written "Order of Dismissal on Rehearing," the Nebraska Workmen's Compensation Court, in disposing of the issues presented, stated in material part as follows: "The evidence clearly shows that plaintiff experienced bilateral arm pain and paresthesia with arm weakness some time in 1972. This difficulty increased until he became unable to work because of arm pain and carpal tunnel release surgery on the left wrist was performed in 1973, and resection of left cervical rib and first thoracic rib was performed on April 9, 1974.

"Medical evidence would indicate that plaintiff's left shoulder problem, diagnosed as a thoracic outlet syndrome, was most likely caused by a congenital condition. The plaintiff did make claim for a compensable minor back injury which occurred on September 12, 1974, and which resulted when he was lifting metal wire. Medical evidence shows that he recovered fully from that injury and that he received payment of his medical expense and three days disability benefits from his employer. There is no credible evidence that this minor accident contributed in any manner to plaintiff's shoulder and arm disability.

"The plaintiff has received all benefits to which he is entitled and has not maintained his burden of proving that the shoulder, arm and side disabilities

of which he complains are the result of the accidents and injuries which he alleges arose out of and in the course of his employment by the defendant and his petition should be dismissed." It is clear from the language contained in the above-quoted order that the Nebraska Workmen's Compensation Court specifically based its decision on the lack of competent evidence to sustain plaintiff's claim, and did not base it upon the defense of the running of the statute of limitations, as pled by the defendant. That being the case, we need not discuss that issue in this opinion, nor the allied issue of whether the City of Lincoln had expressly waived in writing its right to rely upon that defense.

We have reviewed the record in this case and have concluded that under the facts and the applicable law the decision of the Nebraska Workmen's Compensation Court on rehearing must be affirmed. At the outset, we point out that plaintiff contends in his briefs on appeal that the defendant presented no evidence at the trial, although he qualified the assertion somewhat by limiting it to *oral* testimony of witnesses. It is clear from the record that the medical evidence adduced in this case was presented by way of depositions, letters, and medical records, of various physicians and surgeons, which were admitted into evidence under the joint stipulation of the parties. Among these depositions was that of a Dr. Paul E. Collicott, whose deposition was taken by the defendant City. Also, it is to be noted that counsel for defendant, City of Lincoln, vigorously cross-examined plaintiff's medical experts and elicited a great deal of factual information, helpful to the defendant, by this technique. The rule is well established in this jurisdiction that triers of fact are not required to accept as absolute verity every statement of witnesses not contradicted by direct evidence, and the persuasiveness of evidence may be destroyed even though not contradicted by direct

evidence. Magdaleno v. Nebraska Panhandle Community Action Agency, 195 Neb. 783, 241 N. W. 2d 114 (1976); K & R, Inc. v. Crete Storage Corp., 194 Neb. 138, 231 N. W. 2d 110 (1975). We have also announced the rule that triers of fact have the right to test the credibility of witnesses by their self-interests and to weigh undisputed parol testimony against facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is not true. Siefford v. Housing Authority, 192 Neb. 643, 223 N. W. 2d 816 (1974). The scope of review, and other applicable principles of law, in appeals from the Workmen's Compensation Court to this court, are clearly stated in Salinas v. Cyprus Industrial Mineral Co., 197 Neb. 198, 247 N. W. 2d 451 (1976), as follows: "The fundamental issue in this case involves the effect of the findings of the Nebraska Workmen's Compensation Court and the sufficiency of the evidence to support its award. Under the new statutory procedure for workmen's compensation cases, appeals from the judgments, orders, or awards of the Workmen's Compensation Court are taken directly to the Supreme Court, and there is no longer a de novo review in this court.

"Section 48-185, R. S. Supp., 1976, provides in part: 'The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award.'

"Under the language which makes the findings of fact by the Workmen's Compensation Court after

rehearing have the same force and effect as a jury verdict, it is obvious that related rules as to verdicts in civil cases also come into play. We have consistently held that in testing the sufficiency of the evidence to support a verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can be reasonably drawn therefrom. Speedway Transp., Inc. v. DeTurk, 183 Neb. 629, 163 N. W. 2d 283. We now hold that in testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom. Obviously the findings of fact after rehearing are not required to be unanimous in order to have the statutory effect."

With the foregoing rules in mind, let us examine some of the medical testimony adduced at the trial before the Workmen's Compensation Court. The principal medical witness for plaintiff was Dr. John R. Thompson, of Lincoln, Nebraska, and counsel for plaintiff urges that we read carefully his medical report dated July 30, 1976. We have done so, but also note that there is in the record in this case an earlier letter from Dr. Thompson to counsel for Mr. Riley, dated December 5, 1975. In the earlier letter, Dr. Thompson states in part as follows: "I have seen Tom several times since January 7, 1972 and through October 23, 1974. Those visits comprised of low back stress for which he was hospitalized two times, I believe.

"In June (6-23-75) Tom was seen in the office complaining of left shoulder pain, which had not been re-

lieved by surgery. I did not know anything about this until that day.

"He was seen again on July 8, 1975, September 3, 1975, and September 9, 1975, with the same complaints of left shoulder pain and weakness of left arm.

"From the description of his pain resulting in the ultimate surgery, I have no doubt his pain could well have been caused by the cervical rib and the nature of his heavy type of work."

In his later report, dated July 30, 1976, Dr. Thompson sets forth the history of the problems as related to him by Riley "including a surgical procedure in April of 1973. He further related continuing arm problems and pain in the shoulder and a further surgical procedure resulting in the removal of left cervical rib on April 9, 1974." In his report he also refers to the accident of September 12, 1974, in which Riley "injured his back, left arm and shoulder, by lifting a heavy object;" and notes that on October 18, 1974, Riley had reinjured his back, and was thereafter released for work on October 24, 1974, "apparently well recovered." Dr. Thompson in his report then recites visits by Riley to him on June 23, 1975, July 8, 1975, and September 3, 1975, at which time Riley complained of excruciating pain in the left arm and left shoulder and weakness in the left arm. At the later date, Dr. Thompson found the entire left shoulder, left arm, and back muscles were atrophied and patient was unable to work, and was 100 percent totally disabled since that date. His conclusions, as set out in his report of July 30, 1976, were as follows: "It is the opinion of the undersigned, based upon reasonable medical certainty, that there is a definite causal connection between the injury of September 12, 1974, and the work of Mr. Riley for his employer, even though the patient has other mechanical problems with the body. He seemed to be fully recovered from those injuries

and it was not until September 3, 1975, that his injury sufficiently manifested itself into a degree of total disability. Prior to the summer of 1975, the injuries seemed to be slight, but it progressed until on September 3, 1975, his disability was complete and was total. It is my opinion that this is a latent and progressive type injury, and was related to his work and particularly the injury of September 12, 1974." In his later reports, Dr. Thompson saw no change in his condition. Dr. Thompson's testimony at the trial on direct examination for the most part supported his medical reports to plaintiff's counsel. He testified that in his opinion his patient apparently got worse in the spring of 1975, but admitted there was a hiatus in that period when he did not see him at all because his client was seeing someone else, Dr. Collicott in particular.

On cross-examination, Dr. Thompson was asked with reference to his notes on Riley's low back strain in September 1974, as follows: "Now do your notes of '74 have any reference to shoulder or arm pain at that time? A. No." He was also asked: "In reference to that report of July 30, '76, which has been marked as Exhibit 2 by the court reporter, you indicate in the history section of that report that Mr. Riley injured back, arm and shoulder, September 12, 1974. And that the arm and shoulder — well, was that arm and shoulder injury reported to your [sic] later, or is that in your records? A. It's not in my records per se. * * *." Dr. Thompson was also asked on cross-examination with reference to his opinion that Riley had been continuously and totally disabled from September 3, 1975, to date: "Is that opinion then not based on the complaints made to you by Mr. Riley concerning his pain? A. Well, I — there's a little — like I say, there's a little hiatus in there where I didn't see him, but when I saw him he still had the pain in his back, starting from September — whatever the date was, early — and con-

tinuing on through the time I seen him, he still had pain in his back and was probably disabled. And when I saw him again in June he was certainly disabled at that time. Q. In other words, as opposed to any specific medical findings, his difficulty is related — or results from his pain which he tells you about? A. Yes, pain and loss of muscular power, muscular strength." Finally, Dr. Thompson was questioned on cross-examination with reference to the statement contained in his letter of December 5, 1975, to the effect that: ." 'From the description of his pain resulting in the ultimate surgery, I have no doubt his pain could well have been caused by the cervical rib and the nature of his heavy type of work.' " With reference to that statement, he was asked: "Now is that a different diagnosis or position in reference to this latent progressive injury than you relate in your letter of July 30th? A. Well, that's what I said it looks like — again, it's a poor copy, but it looks like that's about what I said."

Dr. Paul E. Collicott, Lincoln, Nebraska, was the surgeon who operated on Mr. Riley on April 9, 1974, for a left transaxillary first and cervical rib resection. He testified that Riley had excellent relief of his left arm pain as the result of the operation. He was not seen again until June of 1974, at which time Riley complained of pain in his right posterior back. In his later report of September 2, 1976, Dr. Collicott states in part as follows: "As to whether this injury is work related, as you know, as stated in the previous letter sent to you dated March of 1975, I cannot definitely say that this is work related.

"The patients [sic] condition has been present since birth and could very well have been aggravated by his job. His employment has certainly aggravated a pre-existing condition." Dr. Collicott's testimony was largely with reference to his operation to relieve a thoracic outlet syndrome which he performed on Riley on April 9, 1974, with Riley's release from the

hospital on April 13, 1974. He testified that Riley had bilateral arm pain and paresthesia with mild weakness for approximately 1 year and that he had undergone a carpal tunnel release 1 year previous, with mild relief of hand symptoms on that side; and that he was experiencing acute exacerbation of pain on the left as well as on the right. He also testified that Riley could possibly be having some residual pain from the cervical rib operation and that it might also be from a mild synovitis or neuritis. He was asked: "Are you saying that you feel that the pain that he [Riley] was relating was not connected to or caused by the operation of April 9, '74? A. I am saying that it could very well not be. Q. It could be some other cause? A. Yes." Dr. Collicott was very careful not to testify with reference to matters outside his field of expertise.

Also in evidence in this case is a letter from Dr. Charles W. Newman, Lincoln, Nebraska, addressed to the attorney for the defendant, under date of March 12, 1976. In his letter he states that the examination of Riley's chart poses a problem for him, and that "I find it a little bit difficult to attribute his condition directly to the specific circumstances of employment with the City of Lincoln. * * * I really find it difficult to assign specific responsibility without a specific instance or a specific traumatic episode being recounted." On August 31, 1976, in a letter to the attorney for the plaintiff, Dr. Newman states: "However I do not consider him [Riley] totally disabled as a heavy equipment operator. * * * I have not treated this man. I didn't feel there was any treatment which I could offer. Of course the diagnosis is still up in the air. Electromyograms [sic] have been performed and the whole business has come out negative. That sort of leaves us without a diagnosis."

There is also in evidence a letter report of Dr. Stuart R. Winston, Lincoln, Nebraska, to counsel for

plaintiff, dated September 13, 1976. In his report Dr. Winston relates his examinations and findings, and included there is the statement that he had sent the plaintiff to Dr. John Goldner of Omaha for neuro-muscular studies and he encloses in his letter Dr. Goldner's findings, stating: "I have not seen the patient since that time and am frankly surprised in view of my findings and those of Dr. Goldner's that the gentleman should be so incapacitated."

We have set out above in some detail some of the findings of the various doctors with reference to plaintiff's claimed injuries and disability, not for the purpose of indicating which evidence is the more correct and trustworthy, but rather to indicate that there is in the record respectable evidence going both ways, and that there is in the record evidence from which the Nebraska Workmen's Compensation Court could find that the accident of September 12, 1974, did not contribute to plaintiff's shoulder and arm disability. That being so, under section 48-185, R. R. S. 1943, the order of the Nebraska Workmen's Compensation Court after rehearing, dismissing plaintiff's petition, must be affirmed.

AFFIRMED.