EARL MCCANN, APPELLANT, v. HOLY SEPULCHRE CEMETERY ASSOCIATION AND THE STATE OF NEBRASKA, SECOND INJURY FUND, APPELLEES.

288 N. W. 2d 45

Filed February 5, 1980. No. 42545.

Thomas R. Wolff, for appellant.

Gaines, Otis, Mullen & Carta, for appellee.

Heard before KRIVOSHA, C. J., WHITE, and HASTINGS, JJ., and RIST and BARTU, District Judges.

RIST, District Judge.

This is an appeal by plaintiff, Earl McCann, from an order on rehearing by the Nebraska Workmen's Compensation Court dismissing his claims for benefits against his employer, Holy Sepulchre Cemetery Association and the State of Nebraska, Second Injury Fund, arising from injuries which he claims arose out of and in the course of his employment by the cemetery association.

The record reflects that plaintiff, since early childhood, has had little vision in his right eye, secondary to amblyopia, and was for all practical purposes a one-eyed person. In 1973 plaintiff was struck on the head by a tree branch and thereafter suffered a considerable loss of vision in his left eye, which was diagnosed as a detached retina. Surgery was performed on the left eye on July 26, 1973, following which the vision in that eye showed immediate improvement, but over subsequent months deteriorated. Testing revealed the eyesight in the left eye on July 8, 1976, was limited to counting fingers at 10 feet, and on June 30, 1977, it had a visual acuity of 20/400 which, in the Snellen Table for Visual Loss used by the compensation court, reflects a 96.7 percent loss of vision.

On November 2, 1977, while operating a power mower for his employer, plaintiff bumped into a tombstone which fell and struck him on the back of

the head. Defendant testified he was dazed and checked into the University Medical Center for treatment. He further testified that he suffered a loss of vision in his left eye immediately after the accident.

Testing of plaintiff's left eye following the accident revealed the following: On November 2, 1977, immediately following the accident, he could see hand motion at 1 foot; on November 4, 1977, he could see hand motion at 6 feet; on March 30, 1978, he could count fingers at 6 feet; and on July 10, 1978, he had a visual acuity of 20/400.

The only medical evidence was that of Dr. Raymond Records, an opthalmologist and chairman of the Department of Opthalmology at the University of Nebraska College of Medicine. Dr. Records had examined the plaintiff both before and after the accident of November 2, 1977.

Dr. Records testified that there was a measurable difference in the sight of the left eye before and after the accident as revealed by the tests previously noted. When asked if he could say with a reasonable degree of probability whether the blow to the head on November 2, 1977, caused a loss of vision, he testified: "The relationship is there in time, but, again, there is no structural or anatomic abnormalities that would account for this loss of vision." He further testified: "Before the accident his vision was here and after the accident is here (indicating). There is a difference. Something has happened. I could find no particular reason for this in examining the man's eye or his visual pathways back to his brain, or whatever." He further testified it was possible that the deteriorated eyesight existed prior to the 1977 accident and that the plaintiff's vision would vary from time to time because of his prior retinal problem.

With reference to the examination of plaintiff on July 10, 1978, Dr. Records reported that he could find "no progressive condition which would suggest that

his vision will deteriorate in future years" and further, that "I am unable to document exactly the reason for the decrease in vision, but there is no evidence to date to suggest that there will be a permanent improvement."

On rehearing, the compensation court, in denying plaintiff's petition, found that although Dr. Records had found a decrease in vision as measured before and after the accident of November 2, 1977, he did not state the difference was caused by the accident but rather that he could not say what caused it and that the condition possibly existed before the accident. The court also noted the visual acuity of the left eye was measured at 20/400 both before and after the accident, and found plaintiff had not sustained his burden of proof showing a causal connection between the accident of November 2, 1977, and any loss of vision.

Plaintiff asserts that expert testimony is not required with respect to causation, claiming the injury was objective in nature and with the time line and loss of vision confirmed by the doctor, the plaintiff's testimony as to the accident and subsequent impairment of vision is sufficient to support an order and judgment for plaintiff. We do not agree. The decisions cited by plaintiff in support of his position are those in which the injury was obvious both as to its nature and effect or in which an expert had indicated the probability of causation between the injury and the resulting disability. Clark v. Village of Hemingford, 147 Neb. 1044, 26 N. W. 2d 15; Welke v. City of Ainsworth, 179 Neb. 496, 138 N. W. 2d 808. Here the connection between a blow to the back of the head and loss of vision is neither objective nor obvious. All the more so considering plaintiff's medical history involving his eyes.

The general rule set forth in 31 Am. Jur. 2d, Expert and Opinion Evidence, § 99, p. 620, at pp. 621, 622, is applicable: "* * * where the subject matter

is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of the * * * physical condition. * * * the pathological cause of an ailment is a scientific question upon which it is necessary to obtain scientific knowledge, and only the opinions of experts are of value." This court has held that unless the character of the injury is objective, that is, where its nature and effect are plainly apparent, then it is a subjective condition necessitating expert testimony. Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245. This is such a case requiring expert medical testimony to show the requisite causal connection between the injury and the claimed disability. There is no such testimony or evidence in the record.

Plaintiff has the burden of proof to establish his claim by a preponderance of the evidence. Parrish v. Karl Kehm & Sons Contractors, 186 Neb. 252, 182 N. W. 2d 422; Hyatt v. Kay Windsor, Inc., 198 Neb. 580, 254 N. W. 2d 92.

An award of workmen's compensation benefits cannot be based on possibilities or conjecture. Camarillo v. Iowa Beef Processors, Inc., 201 Neb. 238, 266 N. W. 2d 917; Welke v. City of Ainsworth, supra.

The findings of fact made by the Nebraska Workmen's Compensation Court on rehearing have the same force and effect as a jury verdict in a civil case, and such order may be reversed or set aside with respect to the evidence only where there is not sufficient evidence in the record to warrant the order or judgment. In testing the sufficiency of the evidence to support the findings, every controverted fact must be resolved in favor of the successful party and he should have the benefit of every inference that can be drawn therefrom. Riley v. The

City of Lincoln, 204 Neb. 386, 282 N. W. 2d 586; Hyatt v. Kay Windsor, Inc., *supra*. Such findings on rehearing will not be set aside on appeal unless clearly wrong. Hyatt v. Kay Windsor, Inc., *supra*.

On the record in this case the compensation court was justified in finding that plaintiff failed to meet his burden by a preponderance of the evidence and failed to prove the injury sustained on November 2, 1977, was the cause of any loss of sight. No compensable loss having been proved, the order of the Workmen's Compensation Court on rehearing is affirmed.

AFFIRMED.