HAROLD PARRISH, APPELLANT, V. KARL KEHM & SONS
CONTRACTORS, APPELLEE.

182 N. W. 2d 422

Filed December 23, 1970. No. 37629.

Robert C. Vondrasek of Lathrop & Albracht, for appellant.

Kennedy, Holland, DeLacy & Svoboda, William J. Riedmann, and William M. Lamson, Jr., for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an appeal from a judgment of the district court for Douglas County denying benefits to the claimant under the Workmen's Compensation Act from and after November 22, 1968.

There is no dispute that the claimant was injured on September 30, 1968, while in the employ of the defendant. While working in a hole 18 to 20 feet deep, claimant was injured when a heavy tile fell from a banam bucket and struck his neck and left shoulder. He suffered lacerations requiring 78 stitches to close and some bruises and contusions in the surrounding area. The lacerations were cleansed and sutured, pain pills pre-

scribed, and claimant permitted to return to his home. The issue here is the extent of the injury and the period of time that the claimant was or is disabled as a result of the injury.

The accident occurred on September 30, 1968. On December 13, 1968, claimant filed his petition with the Workmen's Compensation Court. On February 13, 1969, the Workmen's Compensation Court entered its award finding that claimant was totally disabled as a result of the accident and awarded compensation and medical expenses in accordance with the finding and the statute, and for such time as the disability continued. An appeal to the compensation court en banc was waived and an appeal taken to the district court from the award of the one judge compensation court that heard the case.

After a trial de novo, the district court entered its judgment on February 17, 1970, reversing the award of the compensation court entered on February 13, 1969, and dismissed the action. The defendant paid compensation and medical expenses to and including November 22, 1968. The issue here is, therefore, whether or not the claimant is entitled to benefits under the Workmen's Compensation Act after November 22, 1968. The district court, in effect, found that claimant's disability had ceased on the latter date and from this finding and the judgment based thereon, the claimant has appealed to this court.

Claimant testified that after the injury, the lacerations on the neck were sutured and he remained at home for a week thereafter. On October 2, 1968, he went to Dr. John Coe. He saw Dr. Coe five times in the fore part of October. He was examined, X-rays taken, and no abnormalities found. A report of Dr. Coe, dated November 15, 1968, states that claimant was able to do the same work as before the accident and that his injuries resulted in no permanent disability.

Dr. Coe referred claimant to Dr. Richard D. Smith, an orthopedist. Dr Smith examined claimant on No-

vember 8, 1968, and observed the scar on claimant's neck, a small hematoma on the shoulder, and soreness in the area. Dr. Smith stated that these indicated nothing that would prevent claimant from carrying on his usual employment. Claimant was again examined by Dr. Smith on November 15, 1968, and his findings and conclusions were the same as before. On the latter date, Dr. Smith told the claimant that no medical reason existed for claimant not returning to work and that he was fully capable of doing the same work as before the accident. Subsequently claimant informed Dr. Smith by telephone that he was unable to work and thought he would have to lay off work for the winter.

Almost a month later, on December 10, 1968, claimant went to Dr. R. P. Clemens, a general practitioner. On December 20 and 23, 1968, claimant again saw Dr. Clemens who, on the last-stated date, put him on a series of diathermy treatments lasting until May 9, 1969. Claimant also was given therapy treatments by a physical therapist on 26 occasions between January 9 and February 25, 1969. Dr. Clemens stated that an electromyelograph examination was performed, but the results are not testified to. On June 20, 1969, it is stated in the last report made by Dr. Clemens that his diagnosis remained unchanged, that is, that claimant had moderately severe injuries to the left shoulder muscle group and the necessity for an electromyelographic evaluation was required which revealed nerve injury in the left trapezius muscle. Dr. Clemens' report of January 27, 1969, stated that claimant was completely disabled which would persist at least until his next examination in early February.

The claimant testified that he was unable to raise his left arm above the shoulder level for a considerable period of time following the accident, but admits that by proper rotating exercises the arm has become normal in this respect. He complained of injuries to his back that made it impossible for him to work. He used a back

brace which prevented his bending over. He took diathermy and physical therapy treatments which Dr. Clemens said in one of his reports improved his condition. He worked at several different jobs, each of which, for one reason or another, he left. He contended that he could not lift with his left arm and that any kind of hard work was so painful to his back that he was forced to discontinue. Between May 29 and June 5, 1969, an investigator for a detective agency placed the claimant under surveillance and took pictures of the claimant with a movie camera without claimant's knowledge. These pictures show claimant driving a truck for a metal products company without any evidence of a disability to perform this kind of work. He was shown pulling himself into the cab of a crane and operating the levers and brakes, some above his head, without indicating any disability to perform the work. He was shown engaging in changing a tire on his automobile with the help of another in which he picked up a wheel, rim, and tire in his left hand and placed it in the luggage compartment of an automobile without any indication of disability.

In considering the evidence in the case, the credibility of the witnesses and the weight to be given their testimony is of controlling importance. The trial court who saw and heard the testimony could properly consider the following factors: The claim of disability rests solely on the evidence of the claimant. No employer or fellow employee supports his claim. Dr. Smith, to whom he was referred by his own doctor, testified that there is nothing revealed by his examinations to sustain a finding of disability. Dr. Smith further stated that no reason exists why claimant could not have worked at his former job since November 15, 1968, and "that I felt he simply lacked motivation and that once his litigation was settled to his satisfaction I felt sure he would return to the same type of employment that he had done previously." The evidence of the investigator for the detective agency bears out this statement from and after May 29, 1969.

Dr. Coe did not testify nor submit any reports. Nor did Dr. Clemens testify, but he did make several reports. He made but one statement purporting to support the claimant from a medical viewpoint. He said: "I considered the injuries severe enough to obtain an electro-myelo-graphic evaluation, which examination revealed nerve injury in the left trapezius muscle." The electromyelograph was not offered in evidence nor was the basis for Dr. Clemens' conclusion shown. He did not testify and consequently did not subject himself to cross-examination.

The only medical witness in the case was Dr. Smith. He specialized in orthopedic medicine and his qualifications were not questioned. He appeared to be free from bias and personal interest. His testimony was consistent and positive, and he responded directly and precisely within the area of his special knowledge. On the other hand, the reports of Dr. Clemens appeared to be based on the complaints made by the claimant and the assumption that they were entirely credible.

Other medical doctors whose names came into the record did not purport to evaluate the injury as it relates to permanent and partial disability, and for that reason, no doubt, did not testify. It is evident that the trial court considered the evidence of Dr. Smith to be credible and entitled to more weight than that of other medical doctors which came into the record in the form of reports. After a consideration of the foregoing evidence and circumstances, the trial court found, in effect, that the disability of the claimant ended on November 22, 1968. We can find no valid reason for disagreeing with that conclusion.

"A workmen's compensation cause on an appeal to this court is considered de novo upon the record, but where the evidence is conflicting and cannot be reconciled, this court will consider the fact that the trial court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory

testimony of the others." Dike v. Betz, 181 Neb. 580, 149 N. W. 2d 750.

The burden of proof is upon the plaintiff to sustain his claim by a preponderance of the evidence. The rule of liberal construction applies to the Workmen's Compensation Act, but it is not applicable to the evidence offered in support of a claim made for benefits under the act. After a consideration of all the evidence under the foregoing rules, we conclude that claimant failed to establish his claim by a preponderance of the evidence.

Other errors assigned have been examined and are found to be without merit. The judgment of the district court is affirmed.

AFFIRMED.