MARVEL W. BAUMBACH, APPELLANT, V. STANDARD CHEMICAL
MANUFACTURING CO. ET AL., APPELLEES.
363 N.W.2d 170

Filed February 15, 1985.   No. 84-592.

James E. Harris of Harris, Feldman Law Offices, and Sheldon Gallner of Gallner & Gallner, P.C., for appellant.

Joe P. Cashen of Kennedy, Holland, DeLacy & Svoboda, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an appeal in an action under the Nebraska Workmen's Compensation Act.

The plaintiff, Marvel W. Baumbach, was employed by the defendant Standard Chemical Manufacturing Co. as a truckdriver. The plaintiff claims that he is totally disabled as the result of an accident which he alleges occurred on April 29, 1983, while he was operating a truck in the employ of the defendant. On that occasion the plaintiff testified his truck ran over a 4-inch "jump-up" at a bridge north of Albion, Nebraska, which caused the truck to "jump 5 feet in the air." As a result of this jolt, the plaintiff "had pains through every side" of his neck and his "arms went numb." The plaintiff described his condition at that time as "just like having a broken neck, like a broken bone."

After the hearing before a single judge of the compensation court, the plaintiff recovered an award for temporary total disability from April 30, 1983, to the date of the hearing and for so long thereafter as he remained temporarily totally disabled.

On rehearing before three judges of the compensation court, with one judge dissenting, the original award was set aside and the petition dismissed. The plaintiff has appealed from that judgment.

The plaintiff testified that he had approximately 28 years' experience as a truckdriver and had been employed by the defendant since 1975. Beginning in September 1982 the plaintiff was required to drive over rough roads and developed "aches" in his neck and "tingling" in his arms. He consulted Dr. Miller in March 1983 and was referred to Dr. Margules, a neurological surgeon.

Dr. Margules testified that he first saw the plaintiff on October 25, 1980. At that time the plaintiff complained primarily of clumsiness and weakness of the knees and lower extremities. He also complained of paresthesia in the upper extremities and pain in the cervical region. Examination by x rays and a myelogram revealed osteoarthritis and degenerative disk disease at the C5-6 level. Interspaces below could not be visualized because of very heavy musculature of the shoulders. Dr. Margules did not recommend surgery at that time.

Dr. Margules saw the plaintiff again on November 17, 1980, and he was doing well.

Dr. Margules next saw the plaintiff on March 29, 1983, and the plaintiff was complaining of tingling in both arms. He saw the plaintiff again on April 18. The plaintiff said that he was having increasing difficulty, so he was admitted to the hospital on April 30. Dr. Margules' clinical diagnosis was that the plaintiff was having radicular compression from degenerative cervical disk disease, posterior marginal osteoarthritis, and disk herniation.

On May 11, 1983, Dr. Margules operated on the plaintiff and removed the disk material at the C5-6 and C6-7 interspaces, removed the osteoarthritic spicules, and fused the C5, C6, and C7 vertebras. The surgery disclosed that the plaintiff had severe osteoarthritis, a condition that had developed over a period of

10, 15, or more years.

The plaintiff made a good recovery from the surgery but had some residual paresthesia and minimal radicular pain.

Dr. Margules estimated the plaintiff's permanent partial disability after the spinal fusion to be 15 percent of the body as a whole. The plaintiff also has myocardial disease and vascular disease in his lower extremities.

Dr. Margules testified that the herniation of a disk could be the result of repetitive trauma, either microtrauma or macrotrauma, or a single trauma; if the plaintiff hit a severe bump on April 29, 1983, that could start the chain of events resulting in acute radicular pain. He also testified that disk herniation could be a result of normal progression of degenerative disk disease or osteoarthritis. Finally, he testified that in his opinion the repeated trauma or the single event of the large bump triggered the disk herniation.

Dr. Kratochvil, an orthopedic surgeon, testified as an expert witness for the defendants. Based upon a study of the hospital records, Dr. Kratochvil testified that in his opinion the plaintiff had a degenerative herniated disk condition at the time of his examinations by Dr. Margules on March 29 and April 18, 1983. He further testified that it was his opinion that the "jolt" while driving the truck on April 29, 1983, was not the cause of the disk herniation at the C5-6 and C6-7 levels and that the myelogram made in 1980 indicated disk herniation existed at that time.

Findings of fact made by the Nebraska Workmen's Compensation Court on rehearing have the force and effect of a jury verdict in a civil case and will not be set aside unless clearly wrong. *Scott v. State*, 218 Neb. 195, 352 N.W.2d 890 (1984).

In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 333 N.W.2d 406 (1983).

The record discloses that there is a conflict in the medical evidence. There is a conflict between the testimony of Dr. Kratochvil and that of Dr. Margules, and there is some conflict in the testimony of Dr. Margules. These were conflicts to be

resolved by the trier of fact and were resolved against the plaintiff by the compensation court. See, *Doggett v. Brunswick Corp.*, 217 Neb. 166, 347 N.W.2d 877 (1984); *Zaleski v. Farmland Foods, ante* p. 157, 361 N.W.2d 523 (1985).

In order for the plaintiff to recover in this court, the evidence would have to be such that a finding for the plaintiff was compelled as a matter of law. The evidence in this case did not rise to that status, and we are unable to say that the findings on rehearing were clearly wrong. The judgment must, therefore, be affirmed.

AFFIRMED.