CHARLES M. ALDRICH, APPELLEE AND CROSS-APPELLANT, V. ASARCO, INCORPORATED, APPELLANT AND CROSS-APPELLEE.

375 N.W.2d 150

Filed October 25, 1985.   No. 85-183.

James L. Quinlan of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

Ronald L. Comes and Richard W. Ratz of McGrath, North, O'Malley & Kratz, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding under the Nebraska Workmen's Compensation Act.

The plaintiff, Charles M. Aldrich, slipped and fell, injuring his back, on February 26, 1982, while employed as a laborer by the defendant, ASARCO, Incorporated. There is no dispute that the plaintiff was injured as the result of an accident which arose out of and in the course of his employment.

After the hearing before a single judge of the compensation court, the plaintiff recovered an award for medical expenses and temporary total disability from April 3, 1984, to the date of hearing, and for so long thereafter as he remained totally disabled. Upon rehearing, the plaintiff recovered an award of compensation for temporary total disability from April 3 to November 5, 1984, and compensation for a 30-percent loss of earning power for not to exceed 269 weeks thereafter. The plaintiff was also awarded past and future medical expenses and attorney fees.

The defendant, ASARCO, Incorporated, has appealed and contends that the evidence is insufficient to support the court's award of compensation for a 30-percent loss of earning power. The plaintiff has cross-appealed and contends that the evidence was insufficient to support the finding that the plaintiff's temporary total disability had terminated.

The plaintiff had been employed by the defendant as a laborer for approximately 14 years but was terminated from employment after his injury and before any disability other than pain had occurred. At the time of the rehearing he was 39 years old, had not completed the eighth grade, could not fill out his own job application, and, in his words, could not read or write "that good."

In determining the sufficiency of the evidence to support a Workmen's Compensation Court award, the evidence must be considered in the light most favorable to the successful party. *Baumbach v. Standard Chem. Mfg. Co.*, 219 Neb. 324, 363 N.W.2d 170 (1985); *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 333 N.W.2d 406 (1983). Findings of fact made by the compensation court will not be set aside unless the findings are clearly wrong, *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985); *Scott v. State*, 218 Neb. 195, 352 N.W.2d 890 (1984), or unless a contrary finding is compelled as a matter of law, *Baumbach v. Standard Chem. Mfg. Co., supra*; Neb. Rev. Stat. § 48-185 (Reissue 1984).

The defendant contends that the award of compensation for a 30-percent loss of earning power was clearly wrong because at the time of the rehearing the plaintiff's employment had been terminated. Although the record is not clear, it appears that the plaintiff was terminated for reasons other than his back injury. The defendant contends the plaintiff's earning power had been diminished by events other than his injury.

Earning power is not synonymous with wages, *Anderson v. Cowger*, 158 Neb. 772, 65 N.W.2d 51 (1954), and the fact of termination or the reason for it is irrelevant if the plaintiff sustained a compensable injury. The fact that an employer has terminated the employment of an employee, whose ability to perform the work for which he is fitted has been restricted due to an injury arising out of and in the course of his employment, does not destroy the right of the employee to compensation for the injury. See, *Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 341 N.W.2d 906 (1983); *Guerra v. Iowa Beef Processors, Inc.*, 211 Neb. 433, 318 N.W.2d 887 (1982).

Although the accident occurred on February 26, 1982, the plaintiff testified that he felt pain in his back immediately after

he fell down and that he reported the accident to Dr. Sasse, the company doctor, on the following Monday, which was his next workday after the day on which the accident happened. Dr. Sasse prescribed pain pills and muscle relaxants.

On March 6, 1982, the plaintiff consulted another physician, Dr. Margules. On April 12, 1982, he consulted Dr. Angel, his family physician, because the pain was getting worse. According to the plaintiff, Dr. Angel had some x rays made and "shot some needles" in his back.

The plaintiff continued to work, although the pain continued, being worse on some days than on other days.

On April 3, 1984, the plaintiff went to the hospital because the pain had become so bad he "couldn't hardly walk." A myelogram was performed on April 5, 1984. The plaintiff's employment was terminated on March 15, 1984.

On April 30, 1984, he was hospitalized and exploratory surgery performed. He was again hospitalized from June 24 through July 4. A laminectomy was performed on June 27. As of the date of the rehearing, Dr. Margules had not released the plaintiff to return to work and had restricted his lifting to not more than 20 pounds.

At the request of the defendant, the plaintiff was examined by Dr. O'Neil. According to Dr. O'Neil, the plaintiff had sustained a 15-percent permanent partial disability to the body as a whole as a result of the injury and operative procedures. Dr. O'Neil stated that the plaintiff could probably tolerate moderate periods of sitting and standing but should avoid work which would require stooping, lifting, bending, and other stressful activities which would further aggravate his back.

The compensation court, upon rehearing, determined the plaintiff's disability was a 30-percent loss of earning power based upon "the extent of plaintiff's physical impairment as set forth by Dr. O'Neil, the wages earned by the plaintiff at the time of injury, the work restrictions imposed on him by Dr. O'Neil, and plaintiff's limited educational background . . . ."

> "Earning power," as used in Neb. Rev. Stat. § 48-121(2) (Reissue 1978), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to

perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted.

*Akins v. Happy Hour, Inc.*, 209 Neb. 236, 239, 306 N.W.2d 914, 916 (1981) (similarly applicable to the present statute, Neb. Rev. Stat. § 48-121(2) (Reissue 1984)). There is no numerical formula for determining earning power or the loss of earning power due to an injury.

As we view the record, it sustains the award on rehearing.

The cross-appeal centers on whether the finding that the plaintiff was no longer temporarily totally disabled was in error. The plaintiff contends (1) that there is insufficient evidence to support a finding that temporary disability has ended and he is now permanently partially disabled and (2) that he should receive compensation for total disability because he is undergoing rehabilitation.

Viewing the evidence in a light most favorable to the successful party, in this instance the defendant, the record supports the compensation award. The medical evidence supplied by Dr. O'Neil, which is the most recent, appears to be uncontradicted. According to Dr. O'Neil, "Mr. Aldrich is entitled to a fifteen percent *permanent* partial disability of the body as a whole as a result of his back injury and two subsequent operative procedures." (Emphasis supplied.) The fact that the plaintiff was not released by either Dr. O'Neil or his own physician to return to work does not compel a finding that the plaintiff has not reached his maximum recovery. When a workman has reached his maximum recovery, the remaining disability is permanent and he is no longer entitled to compensation for temporary disability. See, *Allen v. Department of Roads and Irrigation*, 149 Neb. 837, 32 N.W.2d 740 (1948); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985).

The compensation court, on rehearing, found that the plaintiff was entitled to rehabilitation, that the plaintiff should cooperate in being tested and evaluated by his rehabilitation counselor or other expert, and that *a rehabilitation plan should be formulated*. The plan should be submitted to the defendant, and if the defendant fails to approve the plan, the plaintiff *may*

*then apply to the compensation court for a further hearing limited to the issue of rehabilitation.* The record now before us does not show that these requirements have been satisfied.

The compensation court may prescribe the procedure to be followed if an injured workman desires to obtain the benefit of rehabilitation services under the statute. *Camp v. Blount Bros. Corp.*, 195 Neb. 459, 238 N.W.2d 634 (1976). Where such a procedure has been prescribed, the right to rehabilitation services, including the right to compensation for temporary total disability while undergoing rehabilitation, depends upon compliance with the procedure prescribed.

We conclude that the record supports the award of the Nebraska Workmen's Compensation Court on rehearing, and the judgment must be affirmed.

The plaintiff is allowed $1,000 for the services of his attorney in this court.

AFFIRMED.