ROSLYNN THOM, APPELLEE, V. LUTHERAN MEDICAL CENTER AND
ALEXSIS, INC., APPELLANTS.
414 N.W.2d 810

Filed October 30, 1987.   No. 87-126.

Michael A. Fortune and Jerald L. Rauterkus of Erickson & Sederstrom, P.C., for appellants.

Scott M. Kirshenbaum of Brodkey Law Offices, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

The defendant employer, Lutheran Medical Center, at Omaha, and its insurer, Alexsis, Inc., appeal the Workers' Compensation Court award of benefits to the plaintiff-appellee employee, Roslynn Thom. The issues presented by the assignments of error argued by appellants are whether the evidence supports the compensation court's findings that Thom (1) suffered a loss of earning power and (2) is entitled to vocational rehabilitation services. We affirm.

The parties stipulated that on April 7, 1985, Thom, a registered nurse, suffered an injury to her back, while lifting a patient, in an accident arising out of and in the course of her employment as a staff nurse. After seeing an emergency room physician, Thom went to her family physician, who referred her to a neurosurgeon. In June 1985, she underwent the removal of two herniated disks. On January 31, 1986, the treating neurosurgeon released Thom to return to work, having stated she had a 7- to 10-percent disability of the body and would be limited in terms of lifting, bending, stooping, and sitting for prolonged periods of time. Thom later saw an orthopedist, who was of the opinion that she suffered a 20- to 25-percent disability of the body.

Thom testified that she continues to have back pain which radiates to her left leg and produces numbness.

Thom is a 36-year-old high school graduate who has been employed in the nursing field since 1977. She first became licensed as a practical nurse and later obtained an associate degree in nursing science. She had worked at Lutheran Medical Center since 1980 and at the time of the accident was earning $9.46 per hour, or $19,676.80 per year, as a staff nurse caring for patients. After being released by the treating neurosurgeon as having reached maximum improvement, Thom was unsuccessful in her efforts to find employment in which she could use her training and experience.

A vocational rehabilitation specialist provided placement assistance to Thom from December 1985 to February 1986, when the effort was terminated. During this period, the

specialist and Thom discussed the possibility that Thom return to school. Thom ultimately enrolled in a college in order to obtain a bachelor's degree in business with a focus on "accounting and computers," a program which will take 2 years of full-time study. The evidence is that the program of study Thom is pursuing leads to jobs with entry level salaries of between $18,000 and $24,000 per year.

After she finished working with Thom, the vocational rehabilitation specialist conducted a labor market survey, looking for jobs which existed in the Omaha area which could be performed within Thom's physical limitations and suitable for one with her training and experience. The specialist found several light and sedentary jobs to exist, such as supervising nurse, nursing home director, admissions director, and industrial nurse. The jobs paid up to $27,800 per year.

It was this witness' opinion that Thom was employable without further training, but she admitted that a degree would enhance Thom's employability and that the accident made her less employable than she had been. The vocational rehabilitation specialist also testified that, while in her judgment it was probable that Thom could have obtained the jobs she described, there were a variety of factors other than physical qualifications to be considered. The witness admitted that a person with a degree would be preferred over one without a degree and that at least one prospective employer had stated a predilection for hiring from within its organization. This specialist did not attempt to actually place Thom in a job.

The coordinator of a medical employment pool which makes most of its placements in temporary work testified that there were jobs which Thom could perform within her physical limitations, such as directing nurses in a home health care agency, taking care of premature babies, adjusting for insurance companies, and working in a doctor's office. These jobs would pay between $8.50 and $10 per hour, or up to $20,800 per year, assuming a 40-hour week. It was also this witness' opinion that Thom was employable without further education or training.

The employment coordinator for Lutheran Medical Center testified that Thom's application for employment with the

center as a utilization review coordinator was rejected because there were other better qualified applicants and that Thom's inquiry regarding employment as a staff nurse in the center's addictive diseases section was answered negatively because of her physical limitations. This witness testified that the health care industry is undergoing changes, but notwithstanding the fact that the center is reducing its nursing staff, there is "kind of a nursing crunch and we are having a hard time filling nursing positions right now, but they are staff nursing positions."

This case is resolved by the oft-repeated principle that the findings of fact made by the Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Nice v. IBP, inc., ante* p. 538, 412 N.W.2d 477 (1987); Neb. Rev. Stat. § 48-185 (Cum. Supp. 1986).

Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Cum. Supp. 1986), is measured by an evaluation of a worker's general eligibility to procure and hold employment, the worker's capacity to perform the required tasks, and the worker's ability to earn wages in employment for which he or she is engaged or fitted. *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986). Earning power is synonymous neither with wages, *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985), nor with loss of physical function, *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980). Nonetheless, loss of physical function may affect a worker's eligibility to procure and hold employment, his or her capacity to perform the required tasks, and the ability to earn wages in employment for which he or she is engaged or fitted. Thus, while there is no numerical formula for determining one's earning power following an injury to the body as a whole, *Aldrich v. ASARCO, Inc., supra*, the extent of such impairment or disability may provide a basis for determining the amount of that worker's loss of earning power. E.g., *Smith v. University of Nebraska Medical Center*, 201 Neb. 730, 271 N.W.2d 852 (1978), *modified after reh'g on other grounds* 202 Neb. 493, 276 N.W.2d 86 (1979), upholding an award equivalent to a 10-percent loss of earning power based on medical opinions that the employee suffered a 10- to 40-percent

impairment of her body as a whole.

The range of expert medical opinions that Thom's physical limitations translated to a permanent partial disability of from 7 to 25 percent of the body as a whole, the fact that she has been unable to find employment, and the evidence that her employment prospects have been diminished as a result of the accident support the compensation court's finding that at present Thom suffers a 25-percent loss of earning power.

The next question is whether the evidence supports the award of vocational rehabilitation benefits.

The bases for awarding vocational rehabilitation are found in Neb. Rev. Stat. § 48-162.01 (Cum. Supp. 1986), which reads in relevant part as follows:

> (3) . . . When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment. . . .
>
> . . . .
>
> (6) Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for . . . partial disability which is or is likely to be permanent may be rehabilitated to the extent that he or she will require less care and attendance or to the extent that he or she can become gainfully employed or increase his or her earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or education, if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program determined by the compensation court or judge thereof to be suitable for him or her or refuses to be evaluated under the provisions of subsection (3) of this section, the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under [Neb. Rev. Stat. §§ 48-101 to 48-151 (Reissue 1984

& Cum. Supp. 1986)].

In *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980), this court held that those provisions read together permit an award of vocational rehabilitation benefits when, as the result of a compensable injury, a worker is unable to perform work for which he or she has previous training or experience or when such rehabilitation will reduce the amount of earning power loss the worker would otherwise suffer.

Just as we have held the determination of a worker's ability to return to work for which he or she is fitted by previous training or experience is a factual question which will not be disturbed on appeal to this court unless clearly wrong, *Nice v. IBP, inc., ante* p. 538, 412 N.W.2d 477 (1987), we hold the determination that there is a reasonable probability that vocational rehabilitation services would reduce the amount of earning power lost by a worker is a question of fact which will not be disturbed on appeal to this court unless clearly wrong.

Lutheran Medical Center, in arguing that the evidence does not support the compensation court's finding, places heavy reliance upon *Pollock v. Monfort of Colorado*, 221 Neb. 859, 381 N.W.2d 154 (1986). This court affirmed the compensation court's denial of vocational rehabilitation in that case on the basis that the evidence supported the compensation court's finding that such would not serve the employee's best interests. The evidence in *Pollock* was that the employee did not have the background to undertake the course he wished to pursue, his future ability to meet the changing requirements of the industry he wished to enter was uncertain, and the availability of future employment was uncertain.

Such, however, is not the situation in this case. While the evidence is not overwhelming, it nonetheless permits inferences that the changing nature of the health care industry reduces employability for registered nurses who cannot function as staff nurses and who lack advanced training or education and that the rehabilitation services awarded would reduce the amount of earning power Thom would otherwise lose. The evidence thus supports the compensation court's specific finding that the vocational rehabilitation awarded will reduce the amount of earning power Thom would otherwise lose and

its implied finding that the rehabilitation is in Thom's best interests, to the extent that these findings cannot be said to be clearly wrong.

Since the effort at rehabilitation is aimed at reducing the earning power loss Thom presently suffers, the compensation court properly suspended payment of benefits for said present loss and awarded compensation for temporary total disability during the period of vocational rehabilitation. At the conclusion of the rehabilitative effort, the extent of Thom's loss of earning power will need to be reconsidered. § 48-162.01.

Pursuant to the provisions of Neb. Rev. Stat. § 48-125 (Cum. Supp. 1986), Thom is awarded the sum of $1,000 to apply toward the fee of her attorney for services rendered in this court.

AFFIRMED.