DALE GARDNER, APPELLANT, V. BEATRICE FOODS COMPANY, APPELLEE.

436 N.W.2d 542

Filed March 10, 1989.    No. 88-392.

Gordon Peterson, of Oglesby, Brown, Thomas, Peterson & Orton, for appellant.

Richard M. Dustin, of Gaines, Mullen, Pansing, Hogan & Cotton, for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and FUHRMAN and WHITEHEAD, D. JJ.

HASTINGS, C.J.

The plaintiff has appealed from an award on rehearing from the Nebraska Workers' Compensation Court which ordered payment to him of $216.45 per week for 31 $6/7$ weeks'

temporary total disability compensation, and thereafter the sum of $25.97 per week for 268 $1/7$ weeks for a 12-percent permanent partial disability; ordered that plaintiff was entitled to vocational rehabilitation services upon the plaintiff's cooperation with and the development by the department of vocational rehabilitation services of a specific vocational objective and a plan for rehabilitation; and failed to award attorney fees to the plaintiff.

The plaintiff assigns as errors that (1) the court failed to find the plaintiff was temporarily disabled beyond and after March 5, 1987; (2) the court failed to find that plaintiff suffered permanent partial disability based on a loss of earning power of between 48 and 100 percent; and (3) the court failed to award plaintiff attorney fees because plaintiff did not receive an increase in benefits on rehearing. We affirm.

The procedure to be followed on an appeal from the compensation court to this court is governed by Neb. Rev. Stat. § 48-185 (Reissue 1988), which provides in part:

> The findings of fact made by the compensation court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the compensation court may be modified, reversed, or set aside *only* upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

(Emphasis supplied.)

In testing the sufficiency of the evidence to support findings of fact made by the compensation court, the evidence must be considered in the light most favorable to the successful party. Factual determinations by that court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the compensation court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the compensation court if the record contains evidence to

substantiate the factual conclusions reached by the compensation court. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given testimony. *McLaughlin v. McLaughlin*, 230 Neb. 460, 432 N.W.2d 45 (1988).

Plaintiff is a 50-year-old man who quit school in the 11th grade and received his GED in 1960. He began working for the defendant in October of 1959. All of his work involved repeated heavy lifting of milk products.

In June of 1986, plaintiff was working in the cooler, picking up boxes containing 6 gallons of milk from the conveyor belt, and stacking them on wood pallets in stacks approximately chest high. This involved lifting approximately 50 pounds and some bending and twisting. He worked in this position for 3 or 4 days and then went on vacation for 15 days. Before he left on vacation, he had stiff and sore muscles, which he attributed to the new job. When he returned from his vacation on July 1 or 2, he "felt fine." Roughly 2 weeks after returning to work, however, his back got "progressively worse," until it got to the point where plaintiff had to see a doctor.

Plaintiff saw Dr. Wilbur Wiedman, who advised him to stay home for 4 or 5 days and rest. Plaintiff claimed he could not afford to do so, and therefore he went back to work, where he was allowed to do lighter work for a period of time, but then plaintiff returned to his former position of stacking 6-gallon boxes. Three days later, on July 25, 1986, plaintiff claimed he could not stand his back pain any longer, and he has not worked since that day.

Dr. Wiedman referred plaintiff to Dr. Lewiston Birkmann, a neurologist. Dr. Birkmann first saw plaintiff on August 20, 1986, and continued seeing him until March 5, 1987. Testing of plaintiff revealed that everything was normal, and Dr. Birkmann diagnosed plaintiff's condition as a lower back strain with spasms. His treatment of plaintiff included medications, physical therapy courses, and a "work hardening program" designed to build up muscle strength.

The physical therapy began in January of 1987 under the guidance of William Barnes, a physical therapist to whom Dr. Birkmann referred plaintiff. According to Barnes, although

plaintiff was "somewhat stubborn" and needed frequent and repeated instructions in the proper technique of the workout, he initially made good progress. However, plaintiff claimed his pain increased throughout the 6-week program. Upon plaintiff's discharge from the program he was able to lift 55 to 60 pounds repetitively for two 15-minute periods and could lift 143 pounds once. Test results showed that he would be able to perform at a "medium heavy" work level, meaning that he could lift 75 pounds infrequently and up to 35 pounds frequently. Barnes testified that plaintiff was at the borderline limit of the lifting requirements of his job.

Plaintiff obtained a release from Dr. Birkmann to go back to work, effective March 5, 1987, with a permanent disability rating of 12 percent of the body as a whole.

Plaintiff also saw an orthopedic surgeon, Dr. Michael Morrison, in December of 1986. A neurological examination yielded normal results. Dr. Morrison's diagnosis was that plaintiff had a strain of the soft tissues and muscles of the lower back, and he recommended that plaintiff strengthen those muscles through exercise.

After plaintiff had completed the physical therapy "work hardening program," he returned to Dr. Morrison for a final examination. The doctor found no evidence of the lower back strain other than the plaintiff's subjective complaints, and stated that there was no objective evidence of physical impairment.

Defendant's general manager, Bruce Williamson, testified that he understood plaintiff had been cleared to lift 35 to 50 pounds, but that there were no "light duty" jobs available at defendant's plant.

Daniel Roth, who owned a temporary-help business, testified that plaintiff would not qualify for placement in a heavy-lifting job. He further stated that the only jobs plaintiff would qualify for with his educational background and physical limitations would have a starting pay of $3.75 to $4 per hour.

Dr. Birkmann had also referred the plaintiff to Roger Glawatz, a vocational rehabilitation counselor. Glawatz testified that when he first saw plaintiff in October of 1986,

plaintiff was quite difficult to work with, but that his attitude had improved. However, the plaintiff does not at this time have a vocational goal, according to Glawatz. As a matter of fact, plaintiff has told Glawatz that "he would like to wait for the outcome of his [workers'] compensation case before he determines on any future job goals."

Following a hearing before one judge of the Workers' Compensation Court, plaintiff was awarded rehabilitation services, temporary total disability until April 12, 1987, and permanent partial disability benefits based on a 12-percent disability to the body as a whole.

Following a rehearing, plaintiff was again awarded rehabilitation services, his temporary total disability benefits were reduced by 5 3/7 weeks, and he was awarded permanent partial disability of 12 percent. The court declined to award attorney fees because plaintiff had failed to secure an increase in the amount of the award on rehearing.

Dealing first with the issue of permanent partial disability, plaintiff claims the trial court erred in determining his loss of earning capacity on the basis of his functional disability. However, this court has said in *Thom v. Lutheran Medical Center*, 226 Neb. 737, 740, 414 N.W.2d 810, 814 (1987):

> Earning power is synonymous neither with wages . . . nor with loss of physical function . . . . Nonetheless, loss of physical function may affect a worker's eligibility to procure and hold employment, his or her capacity to perform the required tasks, and the ability to earn wages in employment for which he or she is engaged or fitted. Thus, while there is no numerical formula for determining one's earning power following an injury to the body as a whole . . . the extent of such impairment or disability may provide a basis for determining the amount of that worker's loss of earning power.

(Citations omitted.)

The evidence was sufficient to support a finding by the Workers' Compensation Court that the plaintiff was suffering from a 12-percent loss of earning capacity. Factual determinations made after rehearing in the Workers' Compensation Court will not be set aside on appeal unless such

determinations are clearly erroneous. *McLaughlin v. McLaughlin*, 230 Neb. 460, 432 N.W.2d 45 (1988).

The same rule supports the compensation court's determination as to the end of plaintiff's temporary total disability. Such a finding was based on Dr. Birkmann's determination that plaintiff was released to return to work with a 12-percent disability, permanent in nature, and that there was nothing further by way of treatment that he, Dr. Birkmann, could offer. "When a worker has reached maximum recovery, the remaining disability is permanent and such worker is no longer entitled to compensation for temporary disability." *Kleiva v. Paradise Landscapes*, 227 Neb. 80, 81, 416 N.W.2d 21, 22 (1987).

Plaintiff argues, however, that because he was awarded rehabilitation benefits, he was entitled to temporary total disability. There is no question but that Neb. Rev. Stat. §§ 48-121(5) and 48-162.01 (Reissue 1988) provide that an employee is entitled to temporary total disability benefits and, where appropriate, travel and living expenses *while undergoing rehabilitation*. However, the problem with plaintiff's situation is that he has not undergone rehabilitation. The award of the compensation court conditioned its order for rehabilitation upon the "formulation of a specific vocational objective and a plan" to be submitted to the court. We are not informed as to whether that was done. The plaintiff was quoted as saying that he wanted to await the outcome of his compensation case before he determined any future job goals. Under the terms and conditions of the compensation court's award, plaintiff would waive any further entitlement to vocational rehabilitation benefits absent the formulation of the plan. Thus, we are unable to determine plaintiff's entitlement to further temporary total disability, if any.

The compensation court may prescribe the procedure to be followed if an injured workman desires to obtain the benefit of rehabilitation services under the statute. . . . Where such a procedure has been prescribed, the right to rehabilitation services, including the right to compensation for temporary total disability while undergoing rehabilitation, depends upon compliance with

the procedure prescribed. (Citations omitted.) *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 131, 375 N.W.2d 150, 153 (1985).

Plaintiff argues that he was entitled to an attorney fee. He argues the unconstitutionality of Neb. Rev. Stat. § 48-125(1) (Reissue 1988) because it provides that where the employer appeals and fails to secure a reduction in the award, the employee *shall* be awarded attorney fees, whereas if the employee files for rehearing and secures an increase, he *may* be awarded attorney fees. In the first place, plaintiff admits that this issue was raised for the first time in this court; second, it was not assigned in his brief as an error; and, third, he failed to notify the Attorney General's office that he intended to challenge a statute on constitutional grounds. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988).

In any event, plaintiff did not secure an increase in his award. Following his hearing before one judge of the compensation court, he was awarded rehabilitation services under very similar conditions to those contained in his final award. There is no merit to his contention in this regard.

The judgment of the Workers' Compensation Court is affirmed.

AFFIRMED.