NAPOLEON J. BRIGGS, APPELLANT, V. CONSOLIDATED FREIGHTWAYS, A CORPORATION, APPELLEE.

451 N.W.2d 278

Filed February 9, 1990.     No. 89-478.

T.J. Hallinan and Gordon D. Ehrlich, of Cobb, Hallinan & Ehrlich, P.C., for appellant.

Richard D. Sievers, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, Napoleon J. Briggs, has appealed from the award on rehearing of the Nebraska Workers' Compensation Court.

The plaintiff was injured on January 23, 1988, while employed by the defendant, Consolidated Freightways, as a truckdriver. While attempting to install chains on the truck tractor that he was driving, the plaintiff injured his back. The plaintiff did not feel any pain immediately, but by the time he arrived at his destination, Cheyenne, Wyoming, he was cold, and his back and neck were sore and stiff. The next morning his condition was worse, but he was able to make the return trip.

The plaintiff did not report his injury to his supervisor until making two more trips. His last trip was on January 31, 1988, and he has not worked since then.

The plaintiff consulted Dr. William Fulcher, an orthopedic surgeon, on February 1, 1988. Dr. Fulcher examined the plaintiff and determined that he had a spondylolisthesis, described as a grade one, between the fifth lumbar vertebra and

sacrum. This is a developmental condition that is found in about 18 percent of the normal population and is caused by some type of defect in the bones of the spine.

The neurological examination of the plaintiff was negative. Dr. Fulcher concluded that the plaintiff had aggravated the spondylolisthesis and prescribed a conservative course of treatment which consisted of restricted physical activity, medication with anti-inflammatory medicine and muscle relaxants, plaintiff's being fitted with a back brace, physical therapy, and exercises.

The defendant paid the plaintiff compensation for temporary total disability for $17^2/_7$ weeks from February 1, 1988. The plaintiff filed his petition in the compensation court on June 27, 1988, alleging that he was still totally and temporarily disabled as the result of his injury on January 23, 1988.

The matter was heard by a single judge of the compensation court on November 1, 1988. The court found that the plaintiff was temporarily totally disabled from February 1 to November 1, 1988, that the plaintiff may not have reached maximum medical improvement, and that the plaintiff was entitled to recover his medical expenses.

The plaintiff requested a rehearing, and the matter was reheard on March 6, 1989, by a three-judge panel. On rehearing, the compensation court found that the plaintiff had been temporarily totally disabled from February 1 to April 24, 1988, that the plaintiff thereafter had sustained a 20-percent permanent partial disability to his body as a whole, and that the plaintiff was entitled to recover compensation for his permanent partial disability and his medical and hospital expenses. The court also found that the plaintiff was entitled to be evaluated as to suitability for rehabilitation services. From that award the plaintiff has appealed to this court.

The plaintiff's assignments of error may be summarized as follows. The compensation court erred in (1) finding the plaintiff was no longer temporarily totally disabled after April 24, 1988; (2) finding the plaintiff had suffered a 20-percent loss of earning capacity, when he had not reached maximum medical improvement; (3) finding the plaintiff's loss of earning

capacity, was synonymous with his 20-percent disability rating; (4) finding there is a reasonable probability vocational rehabilitation would increase the plaintiff's earning capacity; (5) finding the plaintiff was entitled to vocational rehabilitation when he had not yet reached maximum medical recovery; (6) not including health and welfare and pension payments of $145.70 per week in its finding of $972.16 per week as the plaintiff's average weekly wage; and (7) not awarding statutory penalties and an attorney fee.

The plaintiff contends the evidence was insufficient to support the finding on rehearing that he was no longer temporarily totally disabled. He alleges the evidence did not show he had reached maximum medical healing. The plaintiff challenges the court's reliance on surveillance videotapes in its determination that he is no longer temporarily totally disabled. He claims to be temporarily totally disabled because he can no longer work as a truckdriver.

In determining whether the evidence is sufficient to support an award by the compensation court, the evidence must be considered in the light most favorable to the successful party. The findings by the compensation court will not be set aside unless clearly wrong. *McDonald v. Lincoln U-Cart Concrete Co.*, 232 Neb. 960, 442 N.W.2d 892 (1989).

A claimant is not entitled to compensation for temporary total disability after he has achieved maximum medical healing. *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989); *Aldrich v. Asarco, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985). In *Aldrich*, as in this case, the plaintiff had not been released to return to work by the treating physician and had been restricted in his physical activities at the time of the rehearing, but there was evidence that he had a 15-percent permanent partial disability to the body as a whole. We held there was sufficient evidence of maximum recovery. "The fact that the plaintiff was not released by . . . his own physician to return to work does not compel a finding that the plaintiff has not reached his maximum recovery." *Aldrich, supra* at 130, 375 N.W.2d at 153.

On February 2, 1989, Dr. Fulcher testified that the plaintiff had a 20-percent permanent impairment to the body as a whole.

He further testified that objectively the plaintiff's injury had been treated and there was nothing to correct, but subjectively the plaintiff needed improvement in eliminating symptoms of pain in his back and legs.

At the defendant's request, the plaintiff was examined by Dr. Joseph Gross on January 25, 1989. Dr. Gross reported that he found the plaintiff had suffered a lumbosacral strain with left-sided radiculitis. Dr. Gross further stated that the plaintiff had improved under conservative treatment and that it was his opinion that if the plaintiff was fitted with a back support and started on some progressive exercises for his back, he should be able to return to work in the very near future.

Videotapes taken by a private investigator who observed the plaintiff's activities on April 25, 28, 29, and 30, 1988, were received in evidence. These tapes show the plaintiff driving a car and a pickup truck, moving an approximately 25-pound chest of drawers with help from a friend, going to yard sales and test starting lawnmowers, mowing his yard, and engaging in horseplay with his children. His gait appears to be normal, and he is seen bending, pulling, and squatting a number of times.

The compensation court found that the activity level of the plaintiff which was demonstrated on the videotapes established that the plaintiff was not totally disabled. To the extent that the opinions of Drs. Fulcher and Gross were at variance with the conclusions drawn by the court after viewing the videotapes, it disregarded their opinions.

Triers of fact are not required to take the opinions of experts as binding upon them. *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985).

In *Harpham v. General Cas. Co.*, 232 Neb. 568, 441 N.W.2d 600 (1989), the plaintiff alleged the compensation court erred in relying on videotapes to reach its award in light of contradictory testimony from his doctors. As in this case, the tapes were properly admitted as competent evidence of the plaintiff's physical capabilities.

By challenging the court's reliance on the videotapes, plaintiff is challenging the court's evaluation and weighing of the evidence. "As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be

given testimony." *Harpham, supra* at 573, 441 N.W.2d at 604.

The record shows there are no objective medical conditions to be eliminated with treatment regarding plaintiff's injury. He has been given a permanent disability rating. The only further treatment recommended is to reduce subjective pain in plaintiff's back and legs. According to *Pollard v. Wright's Tree Service, Inc.*, 212 Neb. 187, 322 N.W.2d 397 (1982), under these circumstances, there is no uncertainty that plaintiff's injury is permanent and that he is no longer entitled to temporary total disability benefits. See, also, 2 A. Larson, The Law of Workmen's Compensation § 57.12(c) at 10-25 to 10-29 (1989), where the author states:

> The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. . . . The persistence of pain may not of itself prevent a finding that the healing period is over, even if the intensity of the pain fluctuates from time to time, provided again that the underlying condition is stable.

The plaintiff argues that the compensation court was wrong in not finding him to be totally disabled and finding that he had only a 20-percent loss of earning capacity. He contends that he is permanently totally disabled on the basis of the definition of that term in *Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 886, 341 N.W.2d 906, 909 (1983), which states: "A workman who is unable to perform or to obtain any substantial amount of labor, either in his particular line of work or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the Workmen's Compensation Act."

The plaintiff claims that there was no competent evidence his earning capacity was reduced by only 20 percent and that the evidence clearly shows he is totally disabled because he is 61 years old, black, limited in his education and training, and unable to return to work as an over-the-road truckdriver. The record does not show that the plaintiff is unable to obtain employment in any other job for which he is suited.

The plaintiff has the burden to prove his claimed disability. See *Parrish v. Karl Kehm & Sons Contractors*, 186 Neb. 252, 182 N.W.2d 422 (1970). He presented no evidence that he is unable to obtain any employment.

The videotapes convinced the compensation court that the plaintiff is not totally disabled. The 20-percent permanent partial disability rating to the body as a whole was the only expert testimony as to the extent of his permanent disability.

In *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989), the plaintiff claimed that the compensation court had erred in determining his loss of earning capacity to be the same as his functional disability. In that case, the evidence showed that the plaintiff could not return to his former job and that the only jobs he could qualify for with his education would have a low starting pay. The court stated:

> "Earning power is synonymous neither with wages . . . nor with loss of physical function. . . . Nonetheless, loss of physical function may affect a worker's eligibility to procure and hold employment, his or her capacity to perform the required tasks, and the ability to earn wages in employment for which he or she is engaged or fitted. Thus, while there is no numerical formula for determining one's earning power following an injury to the body as a whole . . . the extent of such impairment or disability may provide a basis for determining the amount of that worker's loss of earning power."

*Gardner, supra* at 469, 436 N.W.2d at 545 (quoting *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987)).

In this case, the record is sufficient to support the compensation court's finding that the plaintiff's loss of earning capacity was 20 percent.

The compensation court found that since the plaintiff was unable to return to work as a truckdriver because of the nature of that work and his disability, he should be given the opportunity to be evaluated for rehabilitation services.

The right of a worker to receive vocational rehabilitation benefits depends upon his inability to perform work for which he has had previous training and experience. It is a question of

fact as to whether there is a reasonable probability that vocational rehabilitation can benefit the claimant. Neb. Rev. Stat. § 48-162.01(6) (Reissue 1988) provides:

> Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated to the extent that he or she will require less care and attendance or to the extent that he or she can become gainfully employed or increase his or her earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or education, if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program determined by the compensation court or judge thereof to be suitable for him or her or refuses to be evaluated under the provisions of subsection (3) of this section, the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under the Nebraska Workers' Compensation Act.

In *Behrens v. Ken Corp.*, 191 Neb. 625, 216 N.W.2d 733 (1974), where the plaintiff had sustained a 10-percent permanent partial disability, we held that the plaintiff was entitled to vocational rehabilitation services as might be reasonably necessary to restore her to suitable employment.

With regard to the remaining assignments of error, in *Schlotfeld v. Mel's Heating & Air Conditioning*, 233 Neb. 488, 445 N.W.2d 918 (1989), we held that under Neb. Rev. Stat. § 48-126 (Reissue 1988), money amounts negotiated between a union and employers based on hours worked by union member employees and to be paid directly to the union to cover such things as health and welfare and pensions are not to be included within the term "wages," unless the money value of such advantages to the employee has been agreed upon and fixed by the employer and employee at the time of hiring.

In *Behrens v. American Stores Packing Co.*, ante p. 25, 449 N.W.2d 197 (1989), we held that under Neb. Rev. Stat. § 48-125

(Reissue 1988), the 50-percent penalty for waiting time applies only when payments are delinquent after 30 days' notice has been given of disability or there is no reasonable controversy and the employer refuses payment or neglects to pay compensation for 30 days after injury. In the latter situation, a reasonable attorney fee shall be allowed if the employee receives an award after proceedings in the compensation court.

Under the facts in this case, the plaintiff was not entitled to the penalty for waiting time or an attorney fee.

The judgment is affirmed.

AFFIRMED.