MICHAEL GIBSON, APPELLEE, V. KURT MANUFACTURING AND SAFECO, ITS WORKERS' COMPENSATION CARRIER, APPELLANTS.
583 N.W.2d 767

Filed August 21, 1998.    No. S-97-572.

John R. Hoffert, of Knudsen, Berkheimer, Richardson, Endacott & Routh, for appellants.

Samuel W. Segrist, of Meister & Segrist, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

WRIGHT, J.

## NATURE OF CASE

Michael Gibson commenced this action for workers' compensation benefits, including vocational rehabilitation. A single judge of the Workers' Compensation Court awarded vocational rehabilitation but found that it was not appropriate to determine Gibson's loss of earning power until he completed the vocational rehabilitation. A review panel found that the trial judge was clearly wrong in not assessing Gibson's loss of earning power, as he had reached maximum medical improvement and had received an impairment rating with restrictions at the time of trial. The review panel remanded for a determination of permanent loss of earning power and for clarification regarding certain aspects of the vocational rehabilitation. The Nebraska Court of Appeals held that the evidence supported the trial judge's conclusion that Gibson was entitled to vocational rehabilitation but that a determination as to Gibson's loss of earning power should be postponed until after he had completed rehabilitation. We granted Gibson's petition for further review.

## SCOPE OF REVIEW

Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Gaston v. Appleton Elec. Co.,* 253 Neb. 897, 573 N.W.2d 131 (1998).

## FACTS

A detailed statement of the facts of this case is set forth in the Court of Appeals' opinion, *Gibson v. Kurt Mfg.,* 6 Neb. App. 371, 573 N.W.2d 786 (1998). Thus, we will recite only such facts as are necessary for purposes of our opinion.

During the course of his employment, Gibson injured his back on February 25, 1993. Gibson was treated in an emergency room for the injury to his back, and he was referred to his fam-

ily practitioner. Gibson underwent physical therapy, and on May 4, he returned to work. He was again seen in the emergency room on August 2 with complaints of back pain. An MRI conducted on September 3 showed that he had a pronounced disk herniation at T7-8 with narrowing of the interspace.

A functional capacity assessment was performed on November 15, 1993, which indicated that Gibson had significant physical restrictions. A 6-week "work hardening" program was ordered. Gibson began the program but developed leg pain. A followup showed that Gibson suffered from a deep venous thrombosis not related to his back injury. Gibson eventually returned to work in 1994, doing light duty. He continued working light duty until he was laid off in March 1996.

Gibson petitioned for workers' compensation. The issues before the compensation court were Gibson's loss of earning power and whether he was entitled to vocational rehabilitation. The trial judge found that Gibson was temporarily totally disabled from February 27 to and including April 25, 1993, for $8\frac{2}{7}$ weeks and from July 30 to and including December 27, for a period of $21\frac{4}{7}$ weeks. The trial judge noted that a neurologist had found that Gibson had a 6-percent functional disability to the body as a whole as a result of the disk herniation.

Gibson was ordered to contact the compensation court's rehabilitation specialist for an evaluation and for recommended rehabilitation services. The trial judge found that it was not appropriate at that time to determine Gibson's loss of earning power because it was expected that the rehabilitation services would consist of retraining. The trial judge stated that if, after retraining, the parties could not agree as to Gibson's loss of earning power, either party could apply to the court for further hearing.

Kurt Manufacturing and Safeco (the defendants) requested review by a three-judge panel regarding the vocational rehabilitation award. Gibson cross-appealed, claiming that because he had reached maximum medical improvement, the trial judge erred in failing to make a determination as to his loss of earning power. The review panel found that the trial judge was clearly wrong in not assessing the loss of earning power, as Gibson was at maximum medical improvement and had received an impair-

ment rating with restrictions at the time of trial. The review panel determined that the cause should be remanded for a finding of permanent loss of earning power, if any. The review panel further concluded that the issue of entitlement to vocational rehabilitation should be remanded for clarification and findings as to whether Gibson's ability to obtain employment satisfied the priorities listed for vocational rehabilitation and whether the severe venous thrombosis, which was found not to be work related, had any effect on the issue of vocational rehabilitation.

The defendants appealed the review panel's decision to the Court of Appeals. The issues before the Court of Appeals were whether Gibson was entitled to vocational rehabilitation and whether the compensation court can postpone determination of a claimant's loss of earning power until the claimant has completed vocational rehabilitation.

The Court of Appeals found that Gibson was entitled to vocational rehabilitation, reversing that part of the judgment of the review panel which remanded the issue of vocational rehabilitation to the trial judge. Relying on our decisions in *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987), and *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990), the Court of Appeals held that "at least in injuries involving disability of the body as a whole . . . when a compensation court awards vocational rehabilitation, it should postpone a determination of loss of earning capacity until after the completion of that rehabilitation." *Gibson v. Kurt Mfg.*, 6 Neb. App. 371, 381-82, 573 N.W.2d 786, 792 (1998). Thus, the Court of Appeals reversed that part of the judgment of the review panel which had remanded this issue to the trial judge for immediate determination of loss of earning power. The Court of Appeals affirmed the review panel's judgment in all other respects.

## ASSIGNMENTS OF ERROR

Gibson assigns as error that the Court of Appeals erred in holding that when the compensation court awards vocational rehabilitation as the result of an injury to the body as a whole, the compensation court should postpone a determination of loss of earning power until after completion of that rehabilitation.

## ANALYSIS

Since the parties have not petitioned this court to review the Court of Appeals' determination that Gibson is entitled to vocational rehabilitation, the remaining issue presented is whether the Court of Appeals erred in reversing the review panel's remand for immediate determination of loss of earning power. Our analysis requires us to briefly discuss our holdings in *Thom* and *Bindrum*.

In *Thom*, a registered nurse suffered an injury to her back while lifting a patient, in an accident arising out of and in the course of her employment as a staff nurse. The compensation court awarded temporary total disability and found that Thom had sustained a 25-percent loss of earning power. The compensation court ordered vocational rehabilitation and suspended the payment of permanent partial disability benefits during the time that Thom continued her vocational rehabilitation. On appeal to this court, the issues were whether the evidence supported the compensation court's finding that Thom suffered a loss of earning power and whether she was entitled to vocational rehabilitation services. We affirmed, stating that

> [s]ince the effort at rehabilitation is aimed at reducing the earning power loss Thom presently suffers, the compensation court properly suspended payment of benefits for said present loss and awarded compensation for temporary total disability during the period of vocational rehabilitation. At the conclusion of the rehabilitative effort, the extent of Thom's loss of earning power will need to be reconsidered.

226 Neb. at 743, 414 N.W.2d at 815.

In *Bindrum*, the employee appealed from an award of the compensation court, assigning as error the court's finding that he had reached maximum medical recovery as of a certain date and the court's failure to award him temporary total disability benefits from the date of the alleged maximum medical recovery until completion of vocational rehabilitation.

The compensation court had awarded Bindrum benefits for temporary partial loss of earning power during the period he continued to work, but during which he received demotions, and for temporary total disability after he was discharged from work

until December 12, 1988. The compensation court determined that after that date, Bindrum was entitled to benefits for a 5-percent loss of earning power. He was also awarded vocational rehabilitation.

Bindrum's contention was that the compensation court erred in terminating his temporary total disability benefits as of December 12, 1988, and in determining his permanent loss of earning power. Bindrum contended that he was also entitled to temporary total disability benefits during the time that he underwent vocational rehabilitation pursuant to the compensation court's award, notwithstanding the fact that the extent of his loss of earning power had been determined. In modifying the award of the compensation court, we held:

> Because we determine that Bindrum is entitled to temporary total disability benefits while undergoing the vocational rehabilitation ordered by the compensation court, it is necessary to suspend the payment of benefits for the 5-percent loss of earning capacity the compensation court determined Bindrum has presently suffered. At the conclusion of the rehabilitative effort, it will be necessary for the compensation court to determine whether the effort was successful and in fact reduced the loss of earning power Bindrum presently suffers. See *Thom v. Lutheran Medical Center, supra.*

*Bindrum v. Foote & Davies,* 235 Neb. 903, 914-15, 457 N.W.2d 828, 836 (1990).

Based on the above decisions, the Court of Appeals held that at least in injuries involving disability of the body as a whole, when a compensation court awards vocational rehabilitation, it should postpone a determination of loss of earning power until after the completion of that rehabilitation. The Court of Appeals reversed the judgment of the review panel which had remanded this issue to the trial judge for immediate determination of Gibson's loss of earning power.

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient

competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Smart v. Scrivner/Food 4 Less*, 254 Neb. 111, 574 N.W.2d 505 (1998). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Gaston v. Appleton Elec. Co.*, 253 Neb. 897, 573 N.W.2d 131 (1998). Ultimately, what is presented to us for review is a question of law as to whether the compensation court could postpone a determination of Gibson's permanent partial disability until after the completion of vocational rehabilitation.

Gibson argues that the Court of Appeals substantially changed Nebraska law on the issue of payment of permanent partial disability benefits to injured workers with permanent disability to the body as a whole. Gibson asserts that the most serious and detrimental effect of the Court of Appeals' decision is that an injured worker is denied payment of any disability benefits until such time as the employer/carrier has exhausted all appeals on the issue of the award of vocational rehabilitation benefits.

In contrast, the defendants argue that *Thom* and *Bindrum* support the Court of Appeals' decision and that the Court of Appeals did not substantially change Nebraska law. Despite the hardship endured by injured workers during appeal, the defendants argue that it is necessary to postpone a determination of loss of earning power until after vocational rehabilitation. According to the defendants, because the Nebraska Workers' Compensation Act (Act) allows modification only for a change in the physical condition of the employee and not for a change in earning power, an employer would not otherwise receive any benefit from payments for the employee's vocational rehabilitation.

We conclude that *Thom* and *Bindrum* do not support a requirement that, in injuries involving disability of the body as a whole, when a compensation court awards vocational rehabilitation, it should postpone a determination of loss of earning power until after the completion of that rehabilitation. In *Thom*, the issue was not before the court. The issue in *Thom* was whether the evidence supported the compensation court's findings that Thom suffered a loss of earning power and was enti-

tled to vocational rehabilitation services. We affirmed. The compensation court had suspended the payment of permanent partial disability benefits during the time that Thom continued vocational rehabilitation. We noted that since the effort at rehabilitation was aimed at reducing the earning power loss Thom currently suffered, the compensation court had properly suspended payment of benefits for the current loss and awarded compensation for temporary total disability during the period of vocational rehabilitation.

In *Bindrum*, we read Neb. Rev. Stat. §§ 48-121(5) and 48-162.01(3) (Reissue 1988) to mean that an employee, unless he or she is otherwise qualified to receive temporary total disability benefits, is entitled to such benefits only while undergoing rehabilitation which has been ordered by the compensation court. Because we determined that Bindrum was entitled to temporary total disability benefits while undergoing vocational rehabilitation, it was necessary to suspend the payment of benefits for the 5-percent loss of earning power.

Thus, *Thom* and *Bindrum* are inapplicable to the present case. They stand only for the proposition that the employee's benefits for permanent partial disability are suspended during the period such employee receives temporary total disability benefits while undergoing vocational rehabilitation. In other words, an employee may not simultaneously receive benefits for temporary total disability during vocational rehabilitation and benefits for permanent partial disability arising out of the same injury.

However, despite statements in *Thom* and *Bindrum* to the contrary, we find that the defendants are correct in stating that they are unable to apply for modification of the permanent partial disability award solely for the reason that Gibson's loss of earning power has been reduced by vocational rehabilitation. As a statutorily created court, the compensation court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997). Neb. Rev. Stat. § 48-141 (Reissue 1993) provides in pertinent part that in the case of an agreement or award payable periodically, if the parties cannot agree, then at any time after 6 months from the

date of the agreement or award, "an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury . . . ." Thus, to obtain a modification, the applicant must prove, by a preponderance of the evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

In *Ludwickson v. Central States Electric Co.*, 142 Neb. 308, 6 N.W.2d 65 (1942), we specifically addressed whether a change in earning power could constitute an increase or decrease in incapacity due solely to the injury. In *Ludwickson*, the employer sought modification of an award for permanent total disability to the body as a whole after the employee had rehabilitated himself by securing an advanced education and had been employed for several years at a salary greater than that which he was receiving at the time of the accident. The employer argued that "incapacity," as used in the modification statute, referred to "earning power" and "industrial worth."

We noted that the Legislature had chosen to limit incapacity " 'due solely to the injury' " and that the Legislature had defined the term "injury" as meaning " 'only violence to the physical structure of the body and such disease or infection as naturally results therefrom.'" *Id.* at 311-12, 6 N.W.2d at 67 (quoting Comp. Stat. § 48-152 (Supp. 1941), now codified at Neb. Rev. Stat. § 48-151 (Reissue 1993)). We then concluded:

> The incapacity therefore into which the courts may inquire in this proceeding and use as a basis for the modification of an award is that increase or decrease of incapacity which is due solely and only to that violence to the physical structure of plaintiff's body which resulted from his accident, and which increase or decrease has occurred since the award was rendered. It clearly relates to plaintiff's physical condition. . . . Any increase or decrease of incapacity due to other causes is not within the scope of the authorized inquiry and cannot be used as a basis for a modification of the award.

*Ludwickson*, 142 Neb. at 312, 6 N.W.2d at 67-68. While the employer argued that this conclusion was unreasonable, we stated that it was entirely in keeping with the language used and

the intent of the Act as a whole. We stated that because the schedules of compensation provided for automatic reduction of compensation after certain periods of time, the Act clearly contemplated that there would ultimately be a partial rehabilitation of those employees who had received a permanent disability.

We note that since *Ludwickson*, the Act has been amended so as to provide for vocational rehabilitation at the employer's expense. The defendants argue that they should receive some benefit for this expenditure. However, we note that while the Legislature decided to add a provision regarding vocational rehabilitation at the employer's expense, it chose not to amend the strict language of § 48-141 or the definition of an "injury." At the time of Gibson's injury, the Act still provided for an automatic reduction of compensation after certain periods of time. See § 48-121(2). The compensation court has only such authority as has been conferred on it by statute, and we find that the Legislature has not conferred the authority to modify an award on the basis of a decrease in the employee's loss of earning power.

In light of the fact that the defendants cannot modify the award on the grounds that vocational rehabilitation was successful in decreasing Gibson's loss of earning power, we now consider whether the compensation court has the authority to postpone a determination of loss of earning power until after the completion of vocational rehabilitation.

The trial judge found that Gibson's temporary total disability ceased December 27, 1993. Thus, the trial judge found that on that date, Gibson had reached maximum medical improvement. Under current law, a workers' compensation claimant cannot receive temporary total disability benefits upon reaching maximum medical improvement. See *Foreman v. State*, 240 Neb. 716, 483 N.W.2d 752 (1992). As pointed out by Gibson, the delay in determining loss of earning power would not have been so detrimental to Gibson if the award for vocational rehabilitation had not been appealed by the defendants. Section 48-121(5) provided that an employee was entitled to compensation from his or her employer for temporary disability while undergoing rehabilitation. However, because the defendants

appealed, Gibson has not been able to undergo vocational rehabilitation.

Without a determination of loss of earning power, there was nothing on which to base benefits to Gibson pending the ultimate resolution of whether Gibson was entitled to vocational rehabilitation services. Therefore, despite the fact that the trial judge found that Gibson had a substantial loss of earning power, the judge effectively denied Gibson any compensation for that loss of earning power until completion of all the appeals.

Generally, where there has been an award of benefits, the employee is not to be left without those benefits during appeal. Neb. Rev. Stat. § 48-644 (Reissue 1993) states:

> Benefits shall be promptly paid in accordance with a determination or redetermination. If pursuant to a determination or redetermination benefits are payable in any amount as to which there is no dispute, such amount of benefits shall be promptly paid regardless of any appeal. The commencement of a proceeding for judicial review pursuant to section 48-638 shall not operate as a supersedeas or stay. If a decision allowing benefits is finally reversed, no employer's account shall be charged with benefits paid pursuant to the erroneous determination, and benefits shall not be paid for any subsequent weeks of unemployment involved in such reversal.

See, also, 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 80.54 (1998).

We hold that upon a determination that Gibson had reached maximum medical improvement, absent a valid reason for not making such a determination, the trial judge was obligated to make a determination as to Gibson's loss of earning power. The fact that vocational rehabilitation may reduce an employee's loss of earning power is not a valid reason for postponing a determination of such loss. To hold otherwise would impose an unfair hardship on employees with permanent partial disability to the body as a whole who have been granted vocational rehabilitation. We note that employees who are not awarded vocational rehabilitation and employees who suffer specific injuries, as opposed to a whole-body impairment, receive benefits during appeal.

While we have held that the compensation court may suspend the payment of permanent partial disability benefits during the time the employee receives temporary total disability benefits while undergoing vocational rehabilitation, we find no statutory authority for the postponement of a determination of loss of earning power pending the outcome of vocational rehabilitation. It is the intent of the Act that the employer pay permanent partial disability benefits as determined, if any, as soon as possible after maximum medical improvement has been reached and that the employer, regardless of the employee's ability to increase his or her earning power through vocational rehabilitation, must continue such payment during the limited period of time provided by the Act unless the requirements of § 48-141 or § 48-185 have been met.

## CONCLUSION

The Court of Appeals erred in reversing the judgment of the review panel which remanded for immediate determination of Gibson's loss of earning power, and that portion of the Court of Appeals' decision is reversed. We affirm that portion of the Court of Appeals' decision which reversed the judgment of the review panel remanding the cause to the trial judge for a redetermination of vocational rehabilitation.

AFFIRMED IN PART, AND IN PART REVERSED.

STEPHAN, J., not participating.