LITA SHELDON-ZIMBELMAN, APPELLANT, V. BRYAN
MEMORIAL HOSPITAL, APPELLEE.

604 N.W.2d 396

Filed January 14, 2000.   No. S-99-314.

Laura A. Lowe, of Cobb & Hallinan, P.C., for appellant.

Walter E. Zink II and Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Lita Sheldon-Zimbelman appeals from a decision by a three-judge review panel of the Nebraska Workers' Compensation Court, which affirmed in part, and in part reversed and remanded with directions the decision of a single Workers' Compensation Court judge. For the reasons stated below, we affirm the decision of the review panel.

## STATEMENT OF FACTS

On January 27, 1992, while employed by Bryan Memorial Hospital (Bryan) as a micrographics sorter, Sheldon-Zimbelman suffered a work-related injury to her back, which injury arose out of and in the course of her employment. On June 22, 1993, Sheldon-Zimbelman filed a petition with the Workers' Compensation Court seeking workers' compensation benefits. On March 7, 1994, following the original hearing, a single judge entered an award in favor of Sheldon-Zimbelman (original award). Pursuant to the original award, the single judge therein found, inter alia, that Sheldon-Zimbelman had "suffered injuries to her back as a result of an accident arising out of and in the course of her employment." The single judge in the original award determined that Sheldon-Zimbelman had been either temporarily totally or temporarily partially disabled on various dates enumerated in the award. The single judge in the original award further found that as a result of the accident, Sheldon-Zimbelman had sustained permanent partial disability in the form of a 20-percent loss of earning capacity.

At the time of the accident, Sheldon-Zimbelman was receiving an average weekly wage of $358.53. Between the date of the accident and the date of the original award, Bryan had paid Sheldon-Zimbelman varying amounts of benefits. The single judge found Sheldon-Zimbelman was entitled to receive $239.02 per week for 34⁶/₇ weeks for temporary total disability

(TTD) benefits, and the single judge credited Bryan for having already paid this amount. The single judge also awarded Sheldon-Zimbelman temporary partial disability (TPD) benefits in the amount of $3,340.97, computed at varying rates for 17 weeks. Bryan received a credit for previously paying this amount. The award further ordered Bryan to pay Sheldon-Zimbelman $119.51 per week for $12^2/7$ weeks for additional TPD benefits, and $47.80 per week for $236^6/7$ weeks for permanent partial disability (PPD) loss of earning benefits.

Thus, consistent with Neb. Rev. Stat. § 48-121(2) (Reissue 1998), the single judge in the original award credited the weeks Sheldon-Zimbelman had received TTD and TPD against her statutory entitlement to 300 weeks for PPD loss of earning benefits. The single judge further ruled that Bryan was entitled to a credit for having already paid to Sheldon-Zimbelman all of the TTD benefits, as well as $3,340.97 of the TPD benefits awarded.

Finally, the single judge found that Sheldon-Zimbelman was entitled to vocational rehabilitation and ordered that she be provided vocational rehabilitation in the form of a combined 4-year bachelor's degree program in human services at Southeast Community College and the College of St. Mary. On the single judge's own motion, the original award was modified to order Bryan to pay Sheldon-Zimbelman "temporary disability" while she was participating in vocational rehabilitation.

Sheldon-Zimbelman completed her bachelor's degree program on or about May 11, 1996. While she was enrolled in the program, Bryan paid her temporary benefits in the amount of $239.02 per week for a total of 149 weeks. After she completed the vocational rehabilitation program, Bryan paid Sheldon-Zimbelman $59^2/7$ weeks for PPD loss of earning benefits in the amount of $47.80 per week. On or about November 25, 1997, counsel for Bryan notified Sheldon-Zimbelman's counsel that Bryan was terminating the payment of Sheldon-Zimbelman's indemnity benefits. In a letter dated May 29, 1998, Bryan's counsel advised Sheldon-Zimbelman's counsel that it had ceased paying the benefits because Bryan had paid Sheldon-Zimbelman more than 300 weeks of benefits, apparently relying upon § 48-121(2).

On January 21, 1998, Sheldon-Zimbelman filed a petition (second petition) bearing the same case number as the original

petition. It is the outcome of the second petition which gives rise to this appeal. In her second petition, Sheldon-Zimbelman challenged Bryan's determination that it had paid her all of the indemnity benefits to which she was statutorily entitled. Specifically, Sheldon-Zimbelman challenged Bryan's claim that it was entitled to include in the 300-week calculation of total benefits the number of weeks it had paid her "temporary disability" benefits while she was participating in vocational rehabilitation. Sheldon-Zimbelman alleged that she was entitled to the entirety of the PPD loss of earning benefits awarded in the original award and that Bryan's "setoff" was contrary to Nebraska law and the workers' compensation statutes.

On August 25, 1998, Sheldon-Zimbelman's second petition came on for hearing before a single judge of the Workers' Compensation Court. The evidence presented at the hearing showed that Bryan had paid Sheldon-Zimbelman 308 weeks of indemnity benefits, including 149 weeks of benefits paid while Sheldon-Zimbelman was participating in her vocational rehabilitation program. Sheldon-Zimbelman presented uncontroverted evidence that as a result of her injury, she had been unable to work for various periods of time between October 22, 1996, and December 3, 1997. Evidence was admitted to show that during the majority of that time period, Bryan had paid Sheldon-Zimbelman PPD loss of earning benefits in accordance with the original award. Evidence was also admitted to show that as a result of her workers' compensation injury, Sheldon-Zimbelman was unable to work beginning on August 5, 1998, and continuing through the date of the hearing on August 25.

In a written order filed September 14, 1998, the single judge found, inter alia, that Sheldon-Zimbelman was totally disabled on various dates between October 22, 1996, and December 3, 1997, and ordered Bryan to pay TTD benefits instead of the PPD loss of earning capacity benefits Bryan had paid for those dates. The single judge also found that Sheldon-Zimbelman was entitled to receive TTD benefits beginning on August 5, 1998, and continuing on into the future "for so long thereafter as [Sheldon-Zimbelman] shall remain temporarily totally disabled." The single judge concluded that although this award of additional TTD benefits would result in Bryan's paying more than 300 weeks of

total benefits, there was no statutory limitation on the number of weeks TTD benefits could be paid. The single judge stated that in view of the resolution of the foregoing matters, the judge would "decline" to address Bryan's claim that it should be credited for benefits it had paid to Sheldon-Zimbelman while she was participating in vocational rehabilitation.

Both parties appealed the single judge's decision to the review panel. Their combined appeals came up for review hearing on February 23, 1999.

In an order dated March 10, 1999, the review panel affirmed the single judge's legal conclusion that there was no statutory prohibition against paying in excess of 300 weeks in indemnity benefits to a workers' compensation claimant when the claimant remained temporarily totally disabled. The review panel concluded, however, that the single judge's award of TTD benefits for the dates between October 1996 and December 1997 was an improper award of retroactive benefits and was in error as a matter of law, based on this court's ruling in *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998). In *Starks*, we held, inter alia, that a party is not entitled to the modification of a prior workers' compensation award to the extent the modification predates the date of filing the petition to modify. The review panel found that the various dates between October 1996 and December 1997 for which the single judge had ordered the retroactive payment of TTD benefits, as opposed to PPD benefits, preceded the January 21, 1998, filing of Sheldon-Zimbelman's second petition, and accordingly, it reversed the single judge's award of these retroactive TTD benefits.

The review panel further ruled that the single judge erred in failing to address the issue of Bryan's claimed credit for the "temporary disability" benefits paid to Sheldon-Zimbelman while she was participating in vocational rehabilitation. The review panel determined that this was a question of law involving the interpretation of a statute and that accordingly, it had the authority to resolve this issue on appeal independent of any decision by the single judge.

Treating the benefits Bryan had paid to Sheldon-Zimbelman while she was undergoing vocational rehabilitation as "temporary total disability," the review panel concluded that Bryan had

paid Sheldon-Zimbelman partial disability subsequent to paying total disability and that pursuant to § 48-121(2), Bryan was entitled to a credit against the 300-week statutory limitation on the payment of indemnity benefits for the weeks of TTD benefits which it had paid Sheldon-Zimbelman while she was participating in vocational rehabilitation. The review panel remanded the case to the single judge and ordered the single judge to make the necessary specific findings and calculations to reflect Bryan's credit for the 149 weeks it had paid Sheldon-Zimbelman TTD benefits while she was participating in vocational rehabilitation prior to receipt of the PPD loss of earning benefits. Sheldon-Zimbelman appeals from the decision of the review panel.

## ASSIGNMENTS OF ERROR

On appeal, Sheldon-Zimbelman asserts two assignments of error: (1) The review panel erred in reversing the single judge's determination that she was entitled to a retroactive award of TTD benefits instead of the PPD loss of earning indemnity payments she had received for the majority of the time between October 22, 1996, and December 3, 1997, and (2) the review panel erred in determining that pursuant to § 48-121(2), Bryan was entitled to a credit against the 300-week maximum indemnity period for the 149 weeks that it had paid temporary benefits to Sheldon-Zimbelman while she was participating in vocational rehabilitation.

## STANDARDS OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Reissue 1998), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999). In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, the higher appellate court reviews the findings of the sin-

gle judge who conducted the original hearing. *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Anderson v. Omaha Pub. Sch. Dist.*, 254 Neb. 1007, 581 N.W.2d 424 (1998).

## ANALYSIS

*Retroactive Award of TTD.*

Sheldon-Zimbelman claims that the review panel erred in reversing the single judge's award of retroactive TTD payments. In support of her claim, Sheldon-Zimbelman argues that the review panel erred because it reversed the findings of fact made by the single judge with regard to her total disability and that the review panel is without authority to reverse findings of fact. This assignment of error is without merit.

Sheldon-Zimbelman misperceives the review panel's decision pertaining to the single judge's award concerning retroactive TTD payments. The review panel did not reverse the single judge's factual findings, but, rather, the review panel determined that as a matter of law, Sheldon-Zimbelman was not entitled to the retroactive award she sought. The review panel may review a single-judge decision for errors of law. Neb. Rev. Stat. § 48-179 (Reissue 1998).

It is well settled that an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Anderson v. Omaha Pub. Sch. Dist., supra.* Accordingly, we review Sheldon-Zimbelman's assigned error regarding the retroactive award of TTD benefits independent of the lower courts' decisions. Based on applicable legal principles, we affirm the decision of the review panel that Sheldon-Zimbelman was not entitled to the retroactive award of TTD payments.

As recognized by the review panel, the case *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998), is dispositive of this issue on appeal. In *Starks*, the claimant, on original hearing, was found to be permanently and totally disabled. Sometime after this award was entered, the employer obtained information that the claimant was working at various odd jobs, in contravention of the determination at the original

hearing that he was totally disabled. Relying on this information, the employer, without a court order, terminated the claimant's workers' compensation benefits. One month later, the employer filed a petition with the Workers' Compensation Court seeking a modification of the original award. The single judge modified the award and the review panel affirmed.

On appeal to this court, we affirmed the review panel's decision affirming the single judge's order to modify the original award, but we held in *Starks*, as a matter of law, that a modification to a workers' compensation award cannot be applied retroactively before the date the application for modification is filed and, accordingly, modified that portion of the review panel's decision affirming the retroactive portion of the award that predated the filing of the application to modify. We reached our decision, in part, based upon earlier decisions of this court that a workers' compensation award is "in full force and effect, as originally entered, until the award is modified pursuant to the procedure set forth in § 48-141." 254 Neb. at 38, 573 N.W.2d at 763 (citing *ITT Hartford v. Rodriguez*, 249 Neb. 445, 543 N.W.2d 740 (1996), and *Ludwickson v. Central States Electric Co.*, 142 Neb. 308, 6 N.W.2d 65 (1942)).

In the instant appeal, Sheldon-Zimbelman filed her second petition on January 21, 1998. The single judge awarded Sheldon-Zimbelman TTD benefits for the time period between October 22, 1996, to December 3, 1997. The award of these TTD benefits antedates the filing of her second petition, and the review panel was correct as a matter of law in reversing the single judge's award of retroactive TTD benefits.

To avoid the application of the principles enunciated in *Starks*, Sheldon-Zimbelman argues that her second petition did not seek a modification of the single judge's original award, but, rather, the single judge was merely clarifying her prior award to state that during those time periods that the evidence demonstrated Sheldon-Zimbelman had been disabled, she should have been paid TTD benefits instead of PPD loss of earning indemnity payments. Sheldon-Zimbelman relies in part on *Bennett v. J. C. Robinson Seed Co.*, 7 Neb. App. 525, 583 N.W.2d 370 (1998), in support of her claim. We reject Sheldon-Zimbelman's argument.

Initially, we note that the original award as modified in 1994 did not provide for the payment of TTD benefits to Sheldon-Zimbelman, except for those benefits which had already been paid to her, for which Bryan received a credit, and the award of "temporary disability" benefits which Sheldon-Zimbelman was to receive while she participated in vocational rehabilitation. As of the date of the original award, Sheldon-Zimbelman was found to be entitled to PPD loss of earning indemnity payments. Implicit in this award is a finding by the single judge that Sheldon-Zimbelman had reached maximum medical improvement and was no longer entitled to temporary benefits, except to the extent she participated in vocational rehabilitation. See *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998).

■ We have long observed that the Nebraska Workers' Compensation Court is a tribunal of limited and special jurisdiction, and "it possesses only that authority which is conferred upon it by the Nebraska Workers' Compensation Act." *Ira v. Swift-Eckrich*, 251 Neb. 411, 414, 558 N.W.2d 40, 43 (1997). We have previously held that the only authority the Workers' Compensation Court possesses to modify orders or awards is that provided by Neb. Rev. Stat. §§ 48-141 and 48-180 (Reissue 1998). See, *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997); *Ira v. Swift-Eckrich, supra*; *Dougherty v. Swift-Eckrich*, 251 Neb. 333, 557 N.W.2d 31 (1996).

Section 48-141(2) is the statutory authority for the Workers' Compensation Court to modify an award "on the ground of increase or decrease of incapacity due solely to the injury." On appeal to this court, Sheldon-Zimbelman denies that she filed a petition for modification under § 48-141 based on an increase or decrease of incapacity. Accordingly, the retroactive award of TTD benefits cannot be justified on the authority of § 48-141.

The Nebraska Workers' Compensation Act, in § 48-180, provides that the Workers' Compensation Court may "modify or change its findings, order, award, or judgment . . . within ten days from the date of such findings, order, award, or judgment for the purpose of correcting any ambiguity, clerical error, or patent or obvious error." The original award was entered in this case on March 7, 1994. The award on Sheldon-Zimbelman's second petition from which she is appealing was entered on

September 14, 1998. This latter award entered greater than 10 days after the original award is not a corrective award provided for in § 48-180.

Because Sheldon-Zimbelman did not seek a modification under § 48-141 due to a change in incapacity and because a modification of the 1994 award was unavailable to Sheldon-Zimbelman in 1998 under the 10-day provision of § 48-180, the single judge was without statutory authority to modify the original award and the review panel was correct in reversing the single judge's award of retroactive TTD benefits. With respect to *Bennett v. J. C. Robinson Seed Co.*, 7 Neb. App. 525, 583 N.W.2d 370 (1998), upon which Sheldon-Zimbelman relies, we note that the employer therein did not appeal to the review panel. To the extent that *Bennett, supra*, implies that a retroactive award is permissible, it is disapproved. Sheldon-Zimbelman's first assignment of error is without merit.

*Statutory Maximum 300 Weeks of Benefits: § 48-121(2).*

On appeal, Sheldon-Zimbelman challenges the review panel's determination that the indemnity payments she received while participating in vocational rehabilitation constituted TTD payments to be credited against the statutory maximum 300 weeks for which she was entitled to receive indemnity benefits. We find no merit to this assignment of error.

Section 48-121 controls this issue. Section 48-121 provides as follows:

> The following schedule of compensation is hereby established for injuries resulting in disability:
>
> (1) For total disability, the compensation during such disability shall be sixty-six and two-thirds percent of the wages received at the time of injury . . . .
>
> (2) For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter . . . . *This compensation shall be paid during the period of such partial disability but not beyond three hundred weeks. Should total disability be followed by partial*

*disability, the period of three hundred weeks mentioned in this subdivision shall be reduced by the number of weeks during which compensation was paid for such total disability.*

. . . .

(5) The employee shall be entitled to compensation from his or her employer for temporary disability while undergoing rehabilitation whether the rehabilitation is voluntarily offered by the employer and accepted by the employee or is ordered by the Nebraska Workers' Compensation Court or any judge of the compensation court.

(Emphasis supplied.)

Based on § 48-121(1), total disability is compensated at two-thirds of the average weekly wage. Pursuant to § 48-121(2), partial disability is compensated at two-thirds of the difference between the claimant's earning power before and after the injury, but compensation under this subsection is limited to 300 weeks. Furthermore, § 48-121(2) provides that if payments for disability that is "partial" in character under subsection (2) *follow* payments for disability that is "total" in character under subsection (1), the employer is given credit against this 300-week total for the number of weeks that benefits for disability total in character were paid under subsection (1). Finally, under § 48-121(5), if a claimant is receiving vocational rehabilitation, he or she is to be provided temporary disability payments.

Sheldon-Zimbelman argues that because § 48-121(2) uses the word "partial" and § 48-121(5) uses the word "temporary," § 48-121(2) does not permit that "temporary" benefits paid pursuant to § 48-121(5) can be applied as a credit against the 300-week maximum provided for in § 48-121(2). Sheldon-Zimbelman does not challenge the review panel's determination that TTD payments in general are credited against the 300 weeks of partial disability payments provided for under § 48-121(2) where benefits for disability "total" in character are followed by benefits for disability "partial" in character. She merely challenges whether the disability benefits a claimant is paid while undergoing vocational rehabilitation are or can be

"temporary total disability" benefits. In resolving the issue raised by Sheldon-Zimbelman, we refer to the controlling statute and cases under it.

When construing statutes, "we are guided by the presumption that the Legislature intended a sensible, rather than an absurd, result in enacting the statute and its amendments." *Battle Creek State Bank v. Haake*, 255 Neb. 666, 680, 587 N.W.2d 83, 92 (1998). As a further aid to statutory interpretation, "we must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it." *Id.* Finally, we have stated that " '[w]hen considering a series or collection of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible.' " *In re Joshua M. et al.*, 256 Neb. 596, 605, 591 N.W.2d 557, 563 (1999) (quoting *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995)).

This court has previously considered the various terms used in § 48-121 and stated: "In relation to 'total disability' under § 48-121(1) and 'disability partial in character' under § 48-121(2), 'temporary' and 'permanent' refer to the duration of disability, while 'total' and 'partial' refer to the degree or extent of the diminished employability or impairment of earning power or earning capacity." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). In opining on claims under § 48-121, this court has used the phrases "temporary total disability," "temporary partial disability," and "permanent partial disability" to describe the nature of the workers' compensation benefits a claimant is receiving pursuant to various subsections of § 48-121, notwithstanding the fact that those phrases in their entirety do not appear in § 48-121. See, generally, *Anderson v. Omaha Pub. Sch. Dist.*, 254 Neb. 1007, 581 N.W.2d 424 (1998); *Foreman v. State*, 240 Neb. 716, 483 N.W.2d 752 (1992); *Boults v. Church*, 200 Neb. 319, 263 N.W.2d 478 (1978).

Specifically, with respect to § 48-121, this court has on numerous occasions, where supported by the facts, described the benefits which a workers' compensation claimant was

receiving while undergoing vocational rehabilitation under § 48-121(5) as "temporary total disability" benefits, not merely as "temporary disability" benefits or "total disability" benefits. See, e.g., *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998); *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997); *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987). We so ruled because a claimant pursuing vocational rehabilitation may do so to the exclusion of employment and because under such circumstances, the disability is therefore "total," but such vocational rehabilitation is designed to result in future employability and, therefore, the disability is "temporary." See Neb. Rev. Stat. § 48-162.01(1) (Reissue 1998) (providing that "[o]ne of the primary purposes of the Nebraska Workers' Compensation Act shall be restoration of the injured employee to gainful employment"). Because benefits received during vocational rehabilitation under § 48-121(5) may be and in this case were "temporary total disability" benefits, a species of total disability benefits, and where such benefits are followed by "partial disability" benefits as in the instant case, pursuant to § 48-121(2), the 300-week period shall be reduced by the number of weeks during which compensation was paid for such total disability.

■ Although we note that the Legislature has recently amended § 48-121, the amendment does not supersede this court's interpretation of § 48-121(5), in which on the specific facts of the cases, we have deemed the benefits received during vocational rehabilitation to be "temporary total disability" benefits. See § 48-121(5) (Supp. 1999). When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation. *State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999); *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992).

Accordingly, we conclude that the temporary benefits Sheldon-Zimbelman received pursuant to § 48-121(5) while pursuing vocational rehabilitation were TTD benefits and were properly credited against the 300-week statutory limitation on workers' compensation indemnity benefits, to the extent such a

credit is permitted under § 48-121(2). The review panel was correct in ruling that as a matter of law under § 48-121(2), Bryan was entitled to a credit against the PPD payments it owed Sheldon-Zimbelman payable after completion of Sheldon-Zimbelman's vocational rehabilitation for the TTD benefits Bryan had previously paid Sheldon-Zimbelman while she was undergoing vocational rehabilitation. Sheldon-Zimbelman's assignment of error is without merit.

## CONCLUSION

Having found no merit to Sheldon-Zimbelman's assigned errors, we affirm the decision of the Workers' Compensation Court review panel.

AFFIRMED.