IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

BECERRA V. UNITED PARCEL SERVICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFFREY BECERRA, APPELLANT,
V.
UNITED PARCEL SERVICE, APPELLEE.

Filed December 31, 2013.    No. A-13-227.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

M.H. Weinberg, of Weinberg & Weinberg, P.C., for appellant.

Charles L. Kuper, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

PIRTLE, Judge.

INTRODUCTION

Jeffrey Becerra appeals from an order of the Nebraska Workers' Compensation Court finding that the temporary total disability (TTD) benefits Becerra would receive during vocational rehabilitation counted toward the 300-week maximum for indemnity payments set forth in Neb. Rev. Stat. § 48-121 (Reissue 2010). The trial court also found that United Parcel Service (UPS) was entitled to a credit against the amount of weekly TTD benefits it had to pay during vocational rehabilitation because it had paid permanent partial disability (PPD) benefits for Becerra's 15-percent loss of earning capacity in full. Because we agree with the trial court that the TTD benefits during vocational rehabilitation count toward the statutory 300-week limit and that a reduction in the amount of TTD benefits during vocational rehabilitation was necessary to avoid Becerra's receiving a double payment, we affirm.

BACKGROUND

On July 21, 2010, Becerra suffered an injury in an accident arising out of and in the course of his employment. On November 23, 2011, the Workers' Compensation Court entered an

- 1 -

award in which it accepted the parties' stipulation that Becerra sustained a 15-percent loss of earning capacity as a result of the accident and injury, entitling him to PPD benefits at the rate of $50.40 per week. The stipulation also stated that Becerra was temporarily totally disabled from July 22 to December 13, 2010, a period of 20 5/7 weeks. UPS had previously paid Becerra TTD benefits at the rate of $145.57 for 20 5/7 weeks, and therefore, he was entitled to 279 2/7 weeks of PPD at the rate of $50.40 per week for the remaining 15-percent loss of earnings. Further, the parties' stipulation stated that UPS had paid Becerra in full for the entire 279 2/7 weeks of future PPD benefits, totaling $14,076.00. The trial court also found that Becerra was entitled to vocational rehabilitation services.

UPS appealed from the award, challenging certain aspects of the vocational rehabilitation award which are not relevant to this appeal. The Nebraska Supreme Court affirmed the trial court's award. See *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

In January 2013, the trial court approved a plan of vocational rehabilitation for Becerra to obtain an associate degree in automated systems technology, which was anticipated to run for a 2-year period.

In February 2013, the parties filed a "Joint Motion for Determination of the Appropriate Temporary Total Disability Rate," at issue before us now, to resolve a dispute over whether UPS was entitled to a credit for the PPD benefits it previously paid in full against the TTD benefits Becerra would receive during vocational rehabilitation.

Following a hearing, the trial court found that pursuant to § 48-121, Becerra was entitled to 300 weeks of benefits, which included the weeks Becerra was in vocational rehabilitation. The trial court determined that because UPS paid the PPD benefits in full prior to any determination of any vocational rehabilitation, UPS was entitled to a credit in the amount of $50.40 per week during the time Becerra is in vocational rehabilitation and receiving TTD benefits. The court found, therefore, that the rate of TTD benefits while Becerra was in vocational rehabilitation should be $95.17 per week (TTD rate of $145.57 minus the previously paid PPD rate of $50.40). The trial court found that to hold otherwise would allow Becerra to receive a double payment during the period of time he is in vocational rehabilitation.

## ASSIGNMENTS OF ERROR

Becerra assigns that the trial court erred in (1) limiting TTD, PPD, and vocational rehabilitation benefits to a maximum of 300 weeks and (2) finding that UPS was entitled to a credit against the weekly amount of TTD benefits paid during vocational rehabilitation.

## STANDARD OF REVIEW

The judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case. *Clark v. Alegent Health Nebraska*, 285 Neb. 60, 825 N.W.2d 195 (2013). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Id.*

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

ANALYSIS

Becerra assigns that the trial court erred in finding that the total number of weeks for TTD, PPD, and vocational rehabilitation benefits was limited to a maximum of 300 weeks. He contends that the disability benefits received during vocational rehabilitation should not be considered TTD benefits that count against the 300 weeks set forth in § 48-121.

The trial court found that based on § 48-121, Becerra was entitled to only 300 weeks of benefits unless he became permanently and totally disabled. Section 48-121 provides:

> (1) For total disability, the compensation during such disability shall be sixty-six and two-thirds percent of the wages received at the time of injury . . . .
>
> (2) For disability partial in character . . . compensation shall be paid during the period of such partial disability but not beyond three hundred weeks. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this subdivision shall be reduced by the number of weeks during which compensation was paid for such total disability.
>
> . . . .
>
> (5) The employee shall be entitled to compensation from his or her employer for temporary disability while undergoing . . . vocational rehabilitation . . . .

Pursuant to § 48-121(2), compensation for partial disability under this subsection is limited to 300 weeks. Further, § 48-121(2) provides that if payments for disability that is "partial" in character under subsection (2) follow payments for disability that is "total" in character under subsection (1), the employer is given credit against this 300-week total for the number of weeks that benefits for disability total in character were paid under subsection (1). *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). Finally, under § 48-121(5), if a claimant is receiving vocational rehabilitation, he or she is to be provided temporary disability payments. *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra.*

In *Sheldon-Zimbelman*, the employee challenged the court's determination that the benefit payments she received while participating in vocational rehabilitation constituted TTD benefits to be credited against the statutory maximum 300 weeks for which she was entitled to receive benefits. The Nebraska Supreme Court noted that on numerous occasions, it had "described the benefits which a workers' compensation claimant was receiving while undergoing vocational rehabilitation under § 48-121(5) as 'temporary total disability' benefits, not merely as 'temporary disability' benefits or 'total disability' benefits." *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. at 579-80, 604 N.W.2d at 404, citing *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998); *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997); *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987).

The *Sheldon-Zimbelman* court concluded that the benefits the employee received during vocational rehabilitation under § 48-121(5) were TTD benefits, a species of total disability benefits, and that where such benefits are followed by "partial disability" benefits, pursuant to § 48-121(2), the 300-week period shall be reduced by the number of weeks that TTD benefits are paid during vocational rehabilitation. Therefore, the TTD benefits received while the employee was pursuing vocational rehabilitation were properly credited against the 300-week statutory limitation on benefits, pursuant to § 48-121(2).

In the instant case, based on the holding in *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra*, the benefits Becerra receives while pursuing vocational rehabilitation are TTD benefits, and those benefits count against the 300-week statutory limitation on benefits. As the trial court explained in its order:

> [Becerra] is not entitled to 300 weeks of indemnity payment (20 5/7 weeks for [TTD] + 270 2/7 weeks for a 15 percent loss of earnings = 300 weeks) and then an additional 104 weeks of TTD for the anticipated 2 year period of time the vocational rehabilitation plan is to run. This would give [Becerra] 404 weeks of benefits. By statute, [Becerra] is limited to 300 total weeks unless [he] is permanently and totally disabled.

We conclude that the trial court did not err in finding that Becerra was entitled to only 300 weeks of benefits and that the TTD benefits received during vocational rehabilitation counted toward those 300 weeks. His first assignment of error is without merit.

Becerra next assigns that the trial court erred in finding that UPS was entitled to a credit against the weekly amount of TTD benefits paid during vocational rehabilitation based on PPD benefits it had already paid in full. The trial court found that UPS was entitled to a credit of $50.40 per week during the period of time that Becerra was in vocational rehabilitation and receiving TTD, resulting in a TTD rate of $95.17 per week (TTD rate of $145.57 minus the previously paid PPD rate of $50.40).

The Nebraska Supreme Court has established that PPD benefits for a loss of earning power are suspended during the time an employee engages in vocational rehabilitation and is receiving TTD benefits. See, *Bindrum v. Foote & Davies, supra* (holding that it is necessary to suspend PPD while TTD benefits are paid for vocational rehabilitation); *Thom v. Lutheran Medical Center, supra* (holding that PPD benefits based on loss of earning capacity were properly suspended during time that TTD was paid during vocational rehabilitation). The holdings in *Bindrum v. Foote & Davies, supra*, and *Thom v. Lutheran Medical Center, supra*, were further explained by the Nebraska Supreme Court as follows:

> [*Thom* and *Bindrum*] stand only for the proposition that the employee's benefits for [PPD] are suspended during the period such employee receives [TTD] benefits while undergoing vocational rehabilitation. In other words, an employee may not simultaneously receive benefits for [TTD] during vocational rehabilitation and benefits for [PPD] arising out of the same injury.

*Gibson v. Kurt Mfg.*, 255 Neb. 255, 262, 583 N.W.2d 767, 771 (1998). The only issue presented in *Gibson* was whether a determination of the claimant's loss of earning power could be postponed until after vocational rehabilitation was completed. The court held it could not.

Therefore, it is clear based on *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987); and *Gibson v. Kurt Mfg., supra*, that when PPD benefits are being paid based on a loss of earning power prior to the start of vocational rehabilitation, PPD benefits are suspended at the start of vocational rehabilitation because the employee becomes entitled to TTD benefits while engaging in vocational rehabilitation.

In the instant case, the parties stipulated that Becerra suffered a 15-percent loss of earning capacity, entitling him to PPD benefits at the rate of $50.40 per week. Based on UPS' prior payment of TTD benefits for 20 5/7 weeks, the parties stipulated that Becerra was entitled to 279 2/7 weeks of PPD benefits for his 15-percent loss of earning capacity. The trial court subsequently approved a vocational rehabilitation plan, which upon its start would entitle Becerra to TTD benefits. Based on the holdings in *Bindrum* and *Thom*, if UPS had not made the prior payment of all PPD benefits, Becerra's PPD benefits would stop when he started vocational rehabilitation and TTD benefits at the rate of $145.57 would begin. Upon completion of the vocational rehabilitation plan, the TTD benefits would stop and if the 300-week period had not been met, Becerra would be entitled to PPD benefits in the amount of $50.40 for the remainder of the 300-week period under § 48-121(2).

However, because UPS prepaid the full amount of PPD benefits, Becerra has already received 300 weeks of benefits (20 5/7 weeks of TTD disability and 279 2/7 weeks of PPD) prior to any determination of vocational rehabilitation. Accordingly, if UPS is not given a credit of $50.40 per week while Becerra is in vocational rehabilitation, he would essentially receive TTD and PPD benefits during that time. As the trial court found, and we agree:

> To [not allow UPS a credit] would allow [Becerra] to receive a double payment, i.e. a payment for [TTD] benefits during vocational rehabilitation in the amount of $145.57 and an additional $50.40 for a 15 percent loss of earning capacity which was previously paid. [Becerra] has had use of the sums advanced to him since November, 2011, and the Court finds [UPS] is entitled to a credit for this prior payment.

Accordingly, the $145.57 per week in TTD benefits that Becerra would otherwise receive during vocational rehabilitation must be reduced by the $50.40 per week in PPD benefits that Becerra has already received. Such an offset is in accordance with *Bindrum* and *Thom*, which held that PPD and TTD cannot be paid at the same time. Becerra's second assignment of error is without merit.

CONCLUSION

We conclude that the trial court did not err in finding that the weeks of TTD benefits Becerra receives while in vocational rehabilitation count toward the 300-week statutory maximum for indemnity payments. We further conclude that the trial court did not err in finding that UPS was entitled to a credit in the amount of $50.40 per week during the time Becerra is in vocational rehabilitation and receiving TTD benefits, resulting in a weekly rate of $95.17 per week. The order of the trial court is affirmed.

AFFIRMED.